**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | | |
| Plaintiff | | |
| v. | | Case No. 7:24-cv-00033-DC-DTG |
| GOOGLE LLC, | | |
| Defendant | | |

**DEFENDANT GOOGLE'S MOTION TO DISMISS**

## <u>NOTE ON CITATIONS</u>

- References to VirtaMove's Complaint (Dkt. 1) are designated by "Compl." followed by paragraph or exhibit number.

- The patents-in-suit, United States Patent Nos. 7,519,814 ("the '814 Patent") and 7,784,058 ("the '058 Patent") were attached as Exhibits 1 and 3 of the Complaint. References to the patents-in-suit are indicated by column and line number, or by claim number.

- All emphases are added unless otherwise noted.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

LEGAL STANDARD ................................................................................................................1

I.   DISMISSAL UNDER RULE 12(B)(6) ........................................................................1

II.  DIRECT AND INDIRECT INFRINGEMENT ............................................................2

III. INELIGIBLE SUBJECT MATTER .............................................................................3

ARGUMENT ...........................................................................................................................3

I.   VIRTAMOVE'S DIRECT INFRINGEMENT ALLEGATIONS SHOULD BE
     DISMISSED ....................................................................................................................3

II.  VIRTAMOVE'S INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE
     DISMISSED ....................................................................................................................5

     A.   VirtaMove Does Not Plead The Elements of Induced Infringement ......................5

     B.   VirtaMove Does Not Plead The Elements of Contributory Infringement ..............7

     C.   VirtaMove Does Not Plead Pre-Suit Knowledge .....................................................8

III. THE '058 PATENT IS INVALID UNDER 35 U.S.C. § 101 .........................................9

     A.   The '058 Patent Is Directed To An Abstract Idea ....................................................9

     B.   The Asserted Patent Claim Adds Nothing Inventive ...............................................14

IV.  THE '814 PATENT IS INVALID UNDER 35 U.S.C. § 101 .........................................16

     A.   The '814 Patent Is Directed To An Abstract Idea ...................................................16

     B.   The Asserted Patent Claim Adds Nothing Inventive ...............................................19

V.   VIRTAMOVE'S CLAIM FOR PRE-SUIT DAMAGES SHOULD BE
     DISMISSED ....................................................................................................................19

CONCLUSION ........................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) .................................................................................5

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
No. W:13-cv-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ..............................2, 3, 5, 8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).........................................................................................1, 3, 14, 15

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016)..................................................................................13

*Arctic Cat Inc. v. Bom-bardier Recreational Prod. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)..................................................................................20

*Artrip v. Ball Corporation*,
735 F. App'x 708 (Fed. Cir. 2018) ............................................................................7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................1

*Badeaux v. BP Expl. & Prod.*,
790 F. App'x 618 (5th Cir. 2019) ..............................................................................2

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*,
827 F.3d 1341 (Fed. Cir. 2016)..................................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................1

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)..................................................................................9

*Bilski v. Kappos*,
561 U.S. 593 (2010)....................................................................................................3

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)..................................................................................15

*Castlemorton Wireless, LLC v. Bose Corp.*,
No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)..............................9

*Chamberlain Grp. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019)..........................................................................14

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)........................................................................3, 14

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015)..............................................................................................8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)............................................................................3

*CPC Pat. Techs. Pty Ltd. v. Apple Inc.*,
    No. 6:21-CV-00165-ADA, 2022 WL 118955 (W.D. Tex. Jan. 12, 2022) ............20

*CTD Networks, LLC v. Amazon.com, Inc.*,
    No. W-22-CV-01034-XR, 2023 WL 5281943 (W.D. Tex. Aug. 16, 2023)........................2, 5

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)............................................................................2

*Electric Power Group, LLC v. Alstom SA.*,
    830 F.3d 1350 (Fed. Cir. 2016)..........................................................................15

*Enco Sys., Inc. v. DaVincia, LLC*,
    447 F. Supp. 3d 916 (E.D. Mo. 2020), *aff'd Enco Sys., Inc. v. DaVincia, LLC*,
    845 F. App'x 953 (Fed. Cir. 2021) ....................................................................12

*Express Mobile, Inc. v. DreamHost LLC*,
    No. 1:18-CV-01173-RGA, 2019 WL 2514418 (D. Del. June 18, 2019)................20

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ................................................................................2

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)............................................................................3

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
    754 Fed. Appx. 996 (Fed. Cir. 2018) ..................................................................15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)..............................................................................................8

*Inhale, Inc v. Gravitron, LLC*,
    No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ..................6

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    127 F. Supp. 3d 506 (D. Md. Sept. 2, 2015)........................................................15

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) ................................................................12, 14

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
   No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) .....................6

*Ortiz & Associates Consulting, LLC v. VIZIO, Inc.*,
   No. 3:23-CV-00791-N, 2023 WL 7184042 (N.D. Tex. Nov., 2023) .....................20

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. Jul. 26, 2019) ..............................7

*Parus Holdings Inc. v. Apple Inc.*,
   No. 6:19-cv-432-ADA, Dkt. 28, 35 (W.D. Tex. Feb. 20, 2020) ................................9

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) ........................................................................2

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)................................................10, 12, 14, 17

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
   657 F.App'x 991 (Fed. Cir. 2016) ................................................................15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017).......................................................12, 14, 15

### Statutes

35 U.S.C. § 101 ....................................................................................1, 3, 9, 16

35 U.S.C. § 271(a) ...........................................................................................2

35 U.S.C. § 271(b) ...........................................................................................5

35 U.S.C. § 271(c) ...........................................................................................7

35 U.S.C. § 287(a) .........................................................................................20

### Other Authorities

Fed. R. Civ. P. 12(b)(6).....................................................................................1

For both Asserted Patents, VirtaMove pleads direct and indirect infringement against Google. But VirtaMove does not plead a plausible claim for either. The only "Accused Product" VirtaMove identifies in its Complaint is Google's Migrate to Containers. But VirtaMove does not provide plausible allegations of infringement for Migrate to Containers, which is barely addressed in VirtaMove's infringement charts. VirtaMove also fails to allege key legal requirements for indirect infringement, including the identification of a direct infringer, specific intent for induced infringement, a supplied "component" that is a material part of the invention, and the lack of substantial non-infringing use of such a "component" for contributory infringement. VirtaMove also fails to adequately plead the knowledge requirement for pre-suit indirect infringement and compliance with the marking statute as required for pre-suit damages.

Further, dismissal is appropriate because the Asserted Patents are ineligible under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The Asserted Patents, both issued before *Alice*, are directed to abstract ideas concerning the functional replicating or copying of system elements or files for use in running applications. The components of the claimed system are nothing more than functional recitations of conventional technology with no new hardware, software, or methods even suggested. These are the types of patent claims that courts routinely invalidate under § 101.

The Court should grant Google's Motion and dismiss VirtaMove's complaint.

## **LEGAL STANDARD**

## I.      **DISMISSAL UNDER RULE 12(B)(6)**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face.*'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff," a court is not

required to accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Badeaux v. BP Expl. & Prod.*, 790 F. App'x 618, 620 (5th Cir. 2019) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Nor do naked assertions devoid of further factual enhancement." *Id.* (cleaned up). Stated differently, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

## II.    DIRECT AND INDIRECT INFRINGEMENT

To succeed on a direct infringement claim, Plaintiff must "plead facts that show the defendant 'makes, uses, offers to sell, or sells' a *complete* patented invention." *CTD Networks, LLC v. Amazon.com, Inc.*, No. W-22-CV-01034-XR, 2023 WL 5281943, at *5 (W.D. Tex. Aug. 16, 2023) (quoting 35 U.S.C. § 271(a); emphasis in original). "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *CTD Networks,* 2023 WL 5281943, at *5, quoting *Centillion*, 631 F.3d at 1284. Similarly, infringement by "making" or "selling" a system requires a *complete* infringing system: "one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention." *CTD Networks,* 2023 WL 5281943, at *5 (quoting *Synchronoss*, 987 F.3d at 1368.)

"To succeed on its induced infringement claim, Plaintiff must allege facts showing that [Defendant]: (1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-cv-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). To succeed on a contributory infringement claim, "the patent owner must demonstrate: '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has

no substantial noninfringing uses, and 4) that the component is a material part of the invention.'"
*Id*. at *8 (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## III.   INELIGIBLE SUBJECT MATTER

Whether a patent covers patentable subject matter under § 101 is a "threshold" question of law that should be answered early in a case. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Indeed, "subject matter eligibility under § 101 may be determined at the 12(b)(6) stage of a case." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). Claim construction is not a prerequisite to a determination under § 101 at the pleadings stage.[1] *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). *Alice* sets forth a two-step test for patent eligibility under § 101. 573 U.S. at 217-18. First, the Court must determine whether the claims are directed to one of the three patent ineligible concepts under § 101: laws of nature, natural phenomena, or abstract ideas. *Id*. at 217. If so, the Court must then "consider the elements of each claim both individually and as an ordered combination to determine whether additional elements transform the nature of the claim into a patent-eligible application," which the Supreme Court has described as a "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up).

## ARGUMENT

## I.   VIRTAMOVE'S DIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

The only "Accused Product" specifically identified by VirtaMove is Google's "Migrate to

---

[1] Google is not aware of any claim construction issues that would preclude a ruling on patentability on a motion to dismiss, much less any terms for which their construction could make the claims not abstract or having an inventive step. This is particularly true given the apparent very broad interpretation of the patents by VirtaMove in the Complaint.

Containers." Compl. ¶¶12, 21, Exs. 2 and 4. As the materials VirtaMove cites state, Migrate to Containers is used "to modernize traditional applications away from virtual machine (VM) instances and into native containers that run on Google Kubernetes Engine (GKE) or Cloud Run platform." Compl. ¶¶12, 21. In other words, Migrate to Containers is a tool that puts applications in containers, which the Complaint describes as portable computing environments (Compl., ¶ 3), so the end users may then run applications in containers after the migration process. The evidence cited by VirtaMove also shows that containers can be used in different environments, using Google products, non-Google products, or an end user's own machine. Compl., Ex. B, 2; Ex. D, 17.

While VirtaMove identifies Migrate to Containers as the Accused Product, its infringement charts attached to the Complaint do not actually provide specific allegations of infringement as to this tool, much less do so on an element-by-element basis. This makes sense because, as shown below, both asserted claims appear directed to the "running" or "executing" of applications. Indeed, much of the cited material concerns containers generally.[2] Compl., Exs. 2 and 4, *passim*. Given the only product VirtaMove actually alleges Google "makes, uses, offers for sale, sells, and/or imports" is Migrate to Containers, however, and given that VirtaMove does not actually provide infringement allegations concerning Migrate to Containers, VirtaMove's Complaint fails to plausibly allege direct infringement by Google as a matter of law.[3] Accordingly, VirtaMove's

---

[2] E.g., https://cloud.google.com/learn/what-are-containers, https://services.google.com/fh/files/misc/why_container_security_matters.pdf, https://cloud.google.com/workstations/docs/customize-container-images, https://cloud.google.com/build/docs/build-push-docker-image, https://cloud.google.com/architecture/best-practices-for-building-containers.

[3] VirtaMove does allege "[t]he infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement [sic] the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement." Compl., ¶¶13, 22. It is possible that VirtaMove is referring the running of applications in containers on Google Cloud. But VirtaMove does not clearly allege that in its Complaint. Nor does VirtaMove provide specific, much less plausible, allegations of such "direction and control" of any such running of applications in containers beyond this boilerplate,

claim of direct infringement against Google should be dismissed.

## II.   VIRTAMOVE'S INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

### A.   VirtaMove Does Not Plead The Elements of Induced Infringement

VirtaMove's allegations of induced infringement for both Asserted Patents amount to a

conclusory statement that Google encourages and instructs end users to infringe through

unidentified user manuals and online instruction materials:

> 14/23.  Defendant also knowingly and intentionally induces infringement of claims of the '814/'058 Patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '814/'058 Patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed. Despite this knowledge of the '814/'058 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '814/'058 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '814/'058 Patent, thereby specifically intending for and inducing its customers to infringe the '814/'058 Patent through the customers' normal and customary use of the Accused Products.

Dkt. 1 at ¶¶14, 23. Such conclusory allegations fail to present facts that demonstrate: (1) Google

knew that the alleged acts infringed, and (2) Google knew that the promotion of its products would

induce or encourage others to infringe the asserted patents. *See Addiction & Detoxification Inst.*

*L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("[S]imply recit[ing] the legal

conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court

to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*

*of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, *7 (W.D. Tex.

---

as would be necessary to plead direct infringement as to their use. *CTD Networks*, 2023 WL 5281943, at *5. Google reserves the right to make further and additional arguments should VirtaMove be permitted to accuse other products despite its current identification of Migrate to Containers as the "Accused Product."

May 12, 2014) (finding that "Plaintiffs generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are . . . insufficient."); *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677, at *6 (W.D. Tex. Nov. 28, 2017) (recommending dismissal of two claims for induced infringement that were "textually identical, save for changing the patent number").

VirtaMove does not even adequately plead that third parties directly infringe the Asserted Patents. VirtaMove alleges Google "continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '814/'058 Patent." Dkt. 1 at ¶¶14, 23. To the extent VirtaMove is referring to use of Migrate to Containers by end users as the direct infringement of third parties, the Complaint is infirm for the same reasons as to Google because its infringement charts do not concern the use of this tool. And as discussed above, *supra* n. 3, to the extent VirtaMove is actually accusing something else, it is again unclear, as to any party, what specifically VirtaMove is accusing. As supposed support for its induced infringement allegation, VirtaMove does also allege that Google "continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '814/'058 Patent," but this is an (albeit insufficient) allegation of direct infringement by Google, not end users. Dkt. 1 at ¶¶14, 23. This failure to plausibly plead third party infringement is alone fatal for induced infringement. *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (dismissing complaint that "entirely lacks factual allegations of third-party infringement, and, therefore, fails to raise a plausible inference that Gravitron intended another party to infringe and knew of that party's infringement").

Further, VirtaMove fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "evidence of culpable conduct, directed to

encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. Jul. 26, 2019) While VirtaMove's infringement charts do make reference to Google materials, VirtaMove's inducement allegations fail to provide any specific allegations such as mapping instructions to end users to the performance of the claimed steps of the patent— *i.e.*, "evidence of culpable conduct, directed to encouraging another's infringement." *Parity*, 2019 WL 3940952, at *2-3. VirtaMove's inducement claims should be dismissed.

## B.    VirtaMove Does Not Plead The Elements of Contributory Infringement

Here too, for each patent, VirtaMove's allegations amount to little more than a conclusory statement that repeats the legal elements of contributory infringement. For example:

> 15/24. Defendant has also infringed, and continue to infringe, claims of the '814/'058 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '814/'058 Patent, in violation of 35 U.S.C. § 271(c).

Dkt. 1 ¶¶ 15, 24. But as the Federal Circuit held in *Artrip*, such conclusory allegations are not enough. *Artrip v. Ball Corporation*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [accused product] it supplied had no substantial noninfringing use," where complaint alleged only that the accused product was "not a 'staple article' and [was] not suitable for substantial noninfringing use"). And again, VirtaMove has not pled any facts establishing that Google was aware that a third party was infringing the Asserted Patents, or any direct infringement of any such third party. *Affinity Labs*, 2014 WL 2892285 at *8.

Further, VirtaMove does not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Artrip*, 735 F. App'x 708 at 713. (citations omitted). In fact, VirtaMove does not allege what "component" Google provides at all. Rather, VirtaMove alleges that Google ***itself*** is "offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention." Dkt. 1, ¶¶ 15, 24. The Complaint does not identify what part of the "Accused Products," if any, is actually a "component," much less any facts showing an inference that the unidentified "component" has no substantial non-infringing uses or is a material part of the invention. VirtaMove's contributory infringement claims should be dismissed.

### C.      VirtaMove Does Not Plead Pre-Suit Knowledge

At a minimum, VitaMove's pre-suit allegations of indirect infringement should be dismissed. Both induced and contributory infringement require "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011) (indirect infringement requires "knowledge of the existence of the patent that is [allegedly] infringed" and "knowledge that the induced acts constitute patent infringement."). Despite this clear requirement, VirtaMove's sole allegation of knowledge of the patents is a conclusory statement that Google "has had knowledge of the '814/'058 Patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed." Compl., ¶¶14, 23.

Courts in this district have repeatedly rejected such allegations of knowledge as insufficient to plead pre-suit indirect infringement. *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432-ADA, Dkt. 28, 35 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims where plaintiff's only allegation of knowledge was that "Defendant Apple has had knowledge of the [asserted

patents] since at least the filing of the original complaint" and "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement"); *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020) (following this "Court's usual practice" and dismissing claims for indirect infringement, finding allegations that defendant learned of the patent via the complaint insufficient to support such a claim).

## III.   THE '058 PATENT IS INVALID UNDER 35 U.S.C. § 101

The Complaint specifically asserts infringement for only claim 1 of the '058 Patent. Compl., Ex. 4. The Complaint does not make any distinctions regarding any non-identified claims, including dependent claims. Google, therefore, treats Claim 1 as representative for this Motion, just as VirtaMove has done in the Complaint.[4] While it would be inappropriate for VirtaMove to reverse course and attempt to make arguments regarding claims not specifically asserted in the Complaint, should it do so, Google reserves the right to address those arguments in its Reply.

### A.   <u>The '058 Patent Is Directed To An Abstract Idea</u>

The '058 Patent is directed to the abstract idea of functionally replicating critical system elements for use with two or more software applications. Claim 1, the only specifically asserted claim from this patent, recites:

1. A computing system for executing a plurality of software applications comprising:

a) a processor;

b) an operating system having an operating system kernel having OS critical system elements (OSCSEs) for running in kernel mode using said processor; and,

c) a shared library having shared library critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode and

---

[4] As the Federal Circuit has explained, "[c]ourts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

i) wherein some of the SLCSEs stored in the shared library are functional replicas of OSCSEs and are accessible to some of the plurality of software applications and when one of the SLCSEs is accessed by one or more of the plurality of software applications it forms a part of the one or more of the plurality of software applications,

ii) wherein an instance of a SLCSE provided to at least a first of the plurality of software applications from the shared library is run in a context of said at least first of the plurality of software applications without being shared with other of the plurality of software applications and where at least a second of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing same function, and

iii) wherein a SLCSE related to a predetermined function is provided to the first of the plurality of software applications for running a first instance of the SLCSE, and wherein a SLCSE for performing a same function is provided to the second of the plurality of software applications for running a second instance of the SLCSE simultaneously.

While lengthy, the claim language is recited in highly generic terms, focusing on "an abstract end-result," not "'a specific means or method' for improving technology." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted). Rather, claim 1 recites a computer system with generic computer elements such as a processor, operating systems, critical system elements for running in kernel mode, critical system elements for use in user mode, shared libraries, and applications. Nothing in the Complaint suggests otherwise. Indeed, VirtaMove does not include any discussion in the Complaint regarding the alleged invention of either Asserted Patent.



FIG. 1
Prior Art

Further, the specification concedes that these various generic components all existed in the art. The specification explicitly states that Figure 1 (above) "shows a **conventional architecture**" with these various elements: applications (blue), application libraries (orange), critical system elements (yellow), operating kernel (pink), and hardware (green), where the critical system elements run in kernel mode and the applications operate in user mode. 6:62-7:22. Figure 2(b) (right) shows a "known system architecture" with these same elements, but where some of the critical system elements run in user mode. 7:54-8:3; *see also* Figure 2(a), 7:23-26 ("FIG. 2 *a* shows a system architecture where critical system elements **27** *a*, **27** *b* execute in user mode but in a distinct context from applications").



**FIG. 2b**
**Prior Art**

Comparing prior art Figures 1 and 2(b) with what the specification indicates is an embodiment of the "invention" in Figure 4 (below), further reveals the abstract nature of Claim 1. Consistent with the abstract idea of functionally replicating critical system elements for use with two or more software applications, Figure 4 consists of the same basic computer elements that the patent admits were known, e.g., applications, application libraries, critical system elements (including the extended library (8:24-26)), operating system kernel, and hardware. The specification states the purported difference between the arrangement in Figures 1, 2(a), and 2(b) and 4 is that the latter includes "replicate[d]" critical system elements, the "functional replicas" in Claim 1, in the operating



**FIG. 4**

system kernel.[5] 7:63-8:3. As the applicant stated in the file history, "the claimed invention utilizes such shared libraries as a way of duplicating critical system elements provided by the operating system." Ex. 1, '058 Prosecution History, Feb. 18, 2009 Amendment at 8. That is the abstract idea to which Claim 1 is directed.

The claim language recites the various functional elements regarding this abstract process in the claimed "computer system": an operating system that "has" an operating system kernel having OSCSEs, SLCSEs stored in the shared library that "are" functional replicas of OSCSEs and "are" accessible to some of the plurality of software applications, an instance of a SLCSE that "is" run without being shared with other applications, a plurality of software applications running that "have use" of a unique instance of a critical system element, and an SLCSE "provided" to applications for running instances of the SLCSE simultaneously. The claim language, however, does not provide a specific implementation of how these various functions and requirements are actually accomplished.[6] It just declares they are to be done.

The Federal Circuit has repeatedly held that claims reciting "result-based functional language" for performing computer processes without "sufficiently describ[ing] how to achieve these results" are abstract. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *see also Interval Licensing*, 896 F.3d at 1345 (claims that "recited only at the broadest, functional level, without explaining how that is accomplished" were abstract); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (claims that focused on

---

[5] The critical system elements are in the user process in Figure 4, but again, the specification concedes that was known in the prior art, as shown in Figure 2(b). 7:54-55.

[6] The only specifically recited hardware is "a processor," just a generic part of a computer. *See, e.g.*, *Enco Sys., Inc. v. DaVincia, LLC*, 447 F. Supp. 3d 916, 922-23 (E.D. Mo. 2020), *aff'd Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953 (Fed. Cir. 2021). And, as noted above, the specification acknowledges there is no difference in the "hardware" of Figure 1 (showing the "prior art") and Figure 4 (showing the "invention").

"abstract end-result," not "'specific means or method' for improving technology" were abstract); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) ("merely claim[ing] the resulting systems," without a "particular way of programming or designing the software," is abstract). Rather, "[t]he purely functional nature of [a] claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs II*, 838 F.3d at 1269.

For example, in *Eolas Technologies Incorporated v Amazon.com Inc., et. al.*, the Federal Circuit analyzed (under both Step 1 and Step 2) the claims which required "an automatically invoked interactive content application 'configured to operate as part of a distribution application' that 'enable[s] a user' to interact with data objects within a World Wide Web Page." 2024 WL 371959, * 6 (Fed. Cir., Feb. 1, 2024). The Federal Circuit found the claim patent ineligible because "the claims merely describe a desired function or outcome without providing details of the claimed distributed processing." *Id.* The same is true here, where Claim 1 at best recites that certain functionality "is" to be done or "provided," but does not recite the details of how to do so.

Similarly, in affirming the district court's grant of a motion to dismiss, the Federal Circuit in *Aftechmobile Inc. v. Salesforce.com, Inc.* found that, "while the claim recited a computer program to accomplish various functions by running a 'computer program code' stored in a generic computer storage medium and run on a generic computer processor, it nowhere recited *how* the program code was written or *how* it worked to accomplish those functions." 853 F. App'x 669, 669-70 (Fed. Cir. 2021). And in *Free Stream Media Corp. v. Alphonso Inc*., the claims recited a television, servers, and a mobile device that could "process an embedded object, constrain an executable environment in a security sandbox, and execute a sandboxed application in the executable environment"—but did not sufficiently "identify 'how' [their] functional result is achieved." 996 F.3d 1355, 1363 (Fed. Cir. 2021). Thus, despite the patentee's assertion of an "improvement to computer functionality," the claims were directed to "the abstract idea of

-13-

providing targeted advertising to the mobile device user." *Id.* at 1365; *see also Interval Licensing LLC v. AOL, Inc.,* 896 F.3d 1335, 1339, 1344-45 (Fed. Cir. 2018) (claims abstract where they recited numerous computer steps for coordinating the display of content to a user, including an "attention manager" component for arranging the content, but included no details on "how the attention manager perform[ed] the function[s]" or "*how* to engineer or program the display"; the claims "simply demand[ed] the production of a desired result . . . without any limitation on how to produce that result") (emphasis in original). The '058 Patent, claim 1 is similarly abstract.

### B.    The Asserted Patent Claim Adds Nothing Inventive

At *Alice* step two, the Court must determine whether the claims add something "significant" "apart from" the abstract idea—an inventive concept that "transform[s] the abstract idea . . . into a patent-eligible application." *Chamberlain Grp. v. Techtronic Indus. Co.,* 935 F.3d 1341, 1348-49 (Fed. Cir. 2019); *see ChargePoint. Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 774 (Fed. Cir. 2019) (must add "significantly more" than the "use of [the abstract idea] itself"). VirtaMove's asserted claim does not. Rather, claim 1 recites only generic computing components, structures, and functions—processor, operating systems, critical system elements running in kernel mode, critical system elements for use in user mode, shared libraries, and applications. Thus, the claimed components and functions are the same "basic functions of a computer" and "purely functional and generic" computer and network components that courts have found merely automate the abstract idea in a "particular technological environment"—which is insufficient to add an inventive concept. *Alice,* 573 U.S. at 225-26; *see, e.g., Two-Way Media,* 874 F.3d at 1339 (multiple network components and protocols for sending and receiving packetized data are non-inventive); *Free Stream Media,* 996 F.3d at 1366 ("[p]rocessing an 'embedded object' . . or rendering targeted data 'through a sandboxed application of a mobile device" is non-inventive); *BSG Tech LLC v. Buyseasons, Inc.,* 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only

'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea").

Even when viewed "as an ordered combination," the claims "ad[d] nothing . . . that is not already present when the steps are considered separately." *Alice,* 573 U.S. at 225 (citation omitted). Indeed, the patentee admits that the prior art already established a combination of the known elements, and instead proposes functionally replicating some of those elements. This is similar to *Electric Power Group, LLC v. Alstom SA.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016), where the claims likewise did not "require any nonconventional computer, network, or display components" and had no "non-generic arrangement." And like the claims here, those in *Electric Power* "merely call[ed] for performance of the claimed functions" without explaining "*how* the desired result is achieved." *Id. Two-Way Media,* 874 F.3d at 1338-39 ("inventive concept" must be in "the *claim*," not just "in the specification"); *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 F.App'x 991, 993 (Fed. Cir. 2016) (rejecting claims that "recite the ***what*** of the invention, but none of the *how* that is necessary to turn the abstract idea into a patent-eligible application") (italics in original); *Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 Fed. Appx. 996, 998 (Fed. Cir. 2018) (invalidating claims "framed in wholly functional terms"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 127 F. Supp. 3d 506, 514 (D. Md. Sept. 2, 2015) (explaining that the claims "must do more than simply explain *what* the invention does, in functional terms; they must explain *how* it does so") (italics in original).

This case is unlike cases where "specific implementation" or "specific improvement" in computer technology is provided that supplies an inventive concept. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC,* 827 F.3d 1341, 1348-49 (Fed. Cir. 2016). For example, in *Bascom,* the claims were saved at *Alice* step two because the court found the claims recited a "non-generic

arrangement" by placing "a filtering tool at a *specific* location" that provided "a technical improvement over prior art ways of filtering such content." *Id.* at 1350. By contrast, here, critical system elements are merely functionally replicated for use with multiple applications. Thus, "it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources [that the applicant] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed *process.*" *SAP,* 898 F.3d at 1169-70.

## IV.   THE '814 PATENT IS INVALID UNDER 35 U.S.C. § 101

Here too, the Complaint only specifically asserts infringement for one claim of the '814 Patent (Compl. Ex. 2), and Google, therefore, treats Claim 1 as representative for this Motion.

### A.   The '814 Patent Is Directed To An Abstract Idea

The '814 Patent is directed to the abstract idea of using containers with copies of system files for applications, so that those applications can be used in different operating environments. Claim 1, the only specifically asserted claim from this patent, recites:

1. In a system having a plurality of servers with operating systems that differ, operating in disparate computing environments, wherein each server includes a processor and an operating system including a kernel a set of associated local system files compatible with the processor, a method of providing at least some of the servers in the system with secure, executable, applications related to a service, wherein the applications are executed in a secure environment, wherein the applications each include an object executable by at least some of the different operating systems for performing a task related to the service, the method comprising:

   storing in memory accessible to at least some of the servers a plurality of secure containers of application software, each container comprising one or more of the executable applications and a set of associated system files required to execute the one or more applications, for use with a local kernel residing permanently on one of the servers;

   wherein the set of associated system files are compatible with a local kernel of at least some of the plurality of different operating systems, the containers of application software excluding a kernel,

   wherein some or all of the associated system files within a container stored in memory are utilized in place of the associated local system files that remain resident on the server,

wherein said associated system files utilized in place of the associated local system files are copies or modified copies of the associated local system files that remain resident on the server,

and wherein the application software cannot be shared between the plurality of secure containers of application software,

and wherein each of the containers has a unique root file system that is different from an operating system's root file system.

As with '058 claim 1, while lengthy, claim 1 of the '814 Patent is recited in highly generic terms, focusing on "an abstract end-result," not "'a specific means or method' for improving technology." *RecogniCorp*, 855 F.3d 1322 at 1326. Indeed, claim 1 similarly recites a computer system with generic computer elements such as containers,[7] servers, operating systems, computing environments, a processor, a kernel, local system files, applications, objects, and a root file system. These are many of the same and/or similar elements of the '058 Patent, which actually incorporates the specification of the '814 Patent by reference. 8:7-10. Both patents stem from provisional applications that were filed in September 2003, and both patents were filed in September 2004.

As with the '058 Patent, the '814 specification acknowledges the existence of these various conventional elements in the "Background of Invention" section. 1:20-3:19. Indeed, the specification lists examples of existing system files and libraries that are to be copied for the claimed invention. 2:53-3:19. Figure 1 (below) illustrates "a containerized system in accordance with an embodiment of this invention." 6:10-11. Like Figure 4 of the '058 Patent, the components shown in this figure are purely conventional; applications, system files, kernels, and hardware were all known in the art. The specification indicates that the system files used in the container (shown

---

[7] VirtaMove alleges it is an "an innovator and pioneer in containerization" (Compl., ¶ 3), but the Complaint does not, and cannot, contend that the '814 Patent inventors invented "containers."



above the horizontal line) are used "in place of system files such as library and configuration files present [sic] typically used in conjunction with the execution of application." 6:59-7:3. Consistent with the abstract idea of using containers with copies of operating system files for applications so applications can be used in different operating environments, in the '814 Patent, these known basic computer elements have simply been copied into a container so they can run with more than one application.

10:18-11:7; Figure 3. VirtaMove does not allege anything to the contrary in its Complaint.

The prosecution history further confirms the abstract focus of using containers that include copies of system files and application software, so that the applications can be used in different operating environments. In a September 3, 2008 response to an Office Action, the applicant specifically stated "Applicants' claimed invention is defined as having 'secure' containers of application software which include OS files that are copies or modified copies of OS files while preserving the original OS files by 'not' overwriting them." Ex. 2, '814 Prosecution History, Sept. 3, 2008 Amendment at 15-16.

Also similar to the '058 Patent, Claim 1 of the '814 Patent recites various functional elements of this process in the claimed computer system: "storing" containers of application software with one or more of the executable applications and system files, the set of associated system files "are compatible" with a local kernel of at least some of the plurality of different operating systems, the containers of application software exclude a kernel, some or all of the copied associated system files "are utilized in place of" system files resident on the server, application software "cannot be shared" between the plurality of secure containers of application software, and containers have a unique root file system. But as with the '058 Patent, Claim 1 of

the '814 Patent does not provide the actual implementation details of these functions and requirements. It simply declares they are to be done. And here too, the claims do not require any particular hardware. The only recited hardware is generic "servers," "memory," and a "processor." VirtaMove does not even try to allege otherwise in its Complaint. As detailed in Section III(A), *supra* (collecting cases), the Federal Circuit has consistently found such claims abstract (and ineligible) where "[t]he purely functional nature of [a] claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs II*, 838 F.3d at 1269.

### B.     The Asserted Patent Claim Adds Nothing Inventive

Here too, claim 1 of the '814 Patent recites generic computing components, structures and functions—as servers, operating systems, computing environments, a processor, a kernel, local system files, applications, objects, containers, and a root file system. It lacks any technical specificity and provides no mechanism for how to perform the claimed functional steps. Rather, as discussed above, the specification only discloses technologies that it admits were well-understood, routine, and conventional. Again, the claimed components and functions are the same sort of "basic functions of a computer" and "purely functional and generic" computer and network components that courts have found merely automate the abstract idea in a "particular technological environment"—which is insufficient to add an inventive concept as a matter of law. *See* Section III(B), *supra*. And once again, VirtaMove's Complaint contains no allegations to the contrary. The '814 Patent is patent ineligible and should be dismissed.

## V.     VIRTAMOVE'S CLAIM FOR PRE-SUIT DAMAGES SHOULD BE DISMISSED

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Id.* at 1366.

Thus, "[a]t the motion to dismiss stage, '[a] claim for past damages requires pleading compliance with the marking statute[.]'" *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, No. 6:21-CV-00165-ADA, 2022 WL 118955, at *2 (W.D. Tex. Jan. 12, 2022) (denying motion to dismiss where plaintiff alleged pre-suit notice of patents[8]) (citing *Express Mobile, Inc. v. DreamHost LLC*, No. 1:18-CV-01173-RGA, 2019 WL 2514418, at *2 (D. Del. June 18, 2019)); *Ortiz & Associates Consulting, LLC v. VIZIO, Inc.*, No. 3:23-CV-00791-N, 2023 WL 7184042, *2-4 (N.D. Tex. Nov., 2023) (dismissing pre-suit damages claim for failing to plead compliance with marking statute).

Here, VirtaMove's Complaint does not contain any allegations regarding compliance with the marking statute.[9] Indeed, the Complaint does not mention marking or § 287 at all. Thus, the Court should dismiss VirtaMove's claims to the extent they seek damages for infringement that allegedly occurred before VirtaMove's Complaint. *Express Mobile*, 2019 WL 2514418 at *2.

## CONCLUSION

Google respectfully requests that the Court dismiss VirtaMove's allegations of direct and indirect infringement, dismiss on the grounds that the asserted claims do not contain patent eligible subject matter, or at a minimum, dismiss VirtaMove's demand for pre-suit damages and indirect infringement.

---

[8] VirtaMove makes no allegations of pre-suit notice in its Complaint.

[9] On its website, VirtaMove claims that at least its "V-Migrate" product practices both asserted patents. https://virtamove.com/about-us/product-patents/ (last accessed April 22, 2024).

Dated:  April 23, 2024

*/s/ David A. Perlson*
David A. Perlson (*pro hac vice pending*)
davidperlson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875 6600
Fax:  (415) 875 6700

Deepa Acharya
deepaacharya@quinnemanuel.com
1300 I Street NW, Suite 900
Quinn Emanuel Urquhart & Sullivan, LLP
Washington,  District  of  Columbia  20005-
3314
Telephone:  (202) 538 8000
Fax:  (202) 538 8100

*/s/ Katharine L. Carmona*
Katharine Lee Carmona
Texas State Bar No. 00787399
kcarmona@jw.com
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (facsimile)

Erica Benites Giese
Texas State Bar No.  24036212
egiese@jw.com
1900 Broadway, Suite 1200
San Antonio, Texas 78215
(210) 978-7700
(210) 978-7790 (facsimile)

Nathaniel St. Clair, II
Texas State Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 (facsimile)

*Counsel for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on April 23, 2024,  I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to counsel for all parties of record.


 Dated:  April 23, 2024                    */s/ Katharine L. Carmona*
                                            Katharine Lee Carmona