# EXHIBIT H

quinn emanuel  trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 875-6344**

WRITER'S EMAIL ADDRESS
**davidperlson@quinnemanuel.com**

July 22, 2024

Peter Tong
Russ, August & Kabat
4925 Greenville Ave., Suite 200
Dallas, TX 75206

Re: *VirtaMove, Corp. v. Google*, Case No. 2:24-cv-00033-DC-DTG

Dear Mr. Tong:

We write regarding several deficiencies in VirtaMove's Corrected Preliminary Disclosure of Asserted Claims and Infringement Contentions (the "Infringement Contentions").[1]  The Infringement Contentions do not comply with the requirements of Midland OGP § I, as discussed in detail below.  We look forward to VirtaMove's prompt resolution of these issues.

### ACCUSED PRODUCTS/INSTRUMENTALITIES

OGP § I requires that VirtaMove provide a "chart setting forth where in the accused product(s) each element of the asserted claim(s) are found." OGP § I.  Google Kubernetes Engine, Cloud Run, and Migrate to Containers are separate products.  VirtaMove needs to provide contentions for each of them separately, on an element-by-element basis.  Even more, in contrast to GKE and Cloud Run, Migrate to Containers is a migration tool to put applications into containers.  VirtaMove's allegations contain barely any discussion of Migrate to Containers.  These deficiencies in the Infringement Contentions preclude Google from understanding VirtaMove's contentions in this matter, which is particularly prejudicial in view of Google's upcoming deadlines for invalidity contentions, document collection, and discovery.  This is particularly problematic given the failure of VirtaMove to provide coherent allegations of infringement at all for numerous limitations, as described further below.

---

[1]  While the issues herein would apply to VirtaMove's Preliminary Disclosure of Asserted Claims and Infringement Contentions, Google addresses the Corrected disclosures herein. Google does not agree, however, that Independent Claim 31 of the '814 patent "was not" asserted in this case as VirtaMove states.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

Further, the list of accused instrumentalities in VirtaMove's disclosures is improperly open-ended and defined by a catch-alls.  For example, VirtaMove states that the Accused Instrumentalities include (a) "**Google products and services using secure containerized applications**, *including without limitation* Google Kubernetes Engine, Cloud Run, and Migrate to Containers, and all versions and variations thereof since the issuance of the '814 patent"; and (b) "**Google products and services using user mode critical system elements as shared libraries, *including without limitation*** Google Kubernetes Engine, Cloud Run, and Migrate to Containers, and all versions and variations thereof since the issuance of the '058 patent" ("Accused Instrumentalities").  Infringement Contentions, p. 2.  Such vague, functionally defined, open-ended disclosures do not provide notice to Google as to any accused product at all.  *VoIP-Pal.com, Inc. v. Google LLC*, No. 6:20-CV-00269-ADA, 2022 WL 827651, at *3 (W.D. Tex. Mar. 18, 2022) ("Plaintiff would serve its interest best by amending its contentions to plainly set forth all its infringement theories" instead of providing an "example"); *Alacritech Inc. v. CenturyLink, Inc.*, 2017 WL 3007464 at *2-3, (E.D. Tex. 2017) (striking Patent Owner's "use of this catch-all language [which] does not satisfy P.R. 3-1(b), because it does not provide adequate notice to [Defendant] of the allegedly infringing devices.  Instead, this language puts the onus on [Defendant] to determine what devices infringe— which is contrary to the intent of the Patent Rules.").

**DOE**

VirtaMove's contentions under the doctrine of equivalents ("DOE") are wholly deficient.  The charts for the Asserted Patents simply include a boilerplate statement that "to the extent any claim limitation is not met literally, it is nonetheless met under the doctrine of equivalents because the differences between the claim limitation and each Accused Instrumentality would be insubstantial, and each Accused Instrumentality performs substantially the same function, in substantially the same way, to achieve the same result as the claimed invention."  '814 Patent Claim Chart, p. 1; '058 Patent Claim Chart, p. 1.  VirtaMove has provided no DOE analysis for either of the Asserted Patents and its boilerplate allegations are insufficient in this Court.  *See, e.g.*, *Tomax AS v. Turbo Drill Indus., Inc*, No. 6:21-CV-00260-ADA, 2023 WL 3171744, at *7 (W.D. Tex. Apr. 6, 2023) (affirming decision to strike expert report where plaintiff "added an entirely new theory of infringement in its expert report on infringement, a doctrine of equivalents argument"); *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) ("Courts in this district have been clear that doctrine of equivalents theories must be laid out in detail in a party's infringement contentions and that the type of boilerplate allegations contained in [the plaintiff's] infringement contentions are insufficient."); *Eolas Techs. Inc. v. Amazon.com, Inc.*, 2016 WL 7666160, at *3 (E.D. Tex. Dec. 5, 2016) (noting that boilerplate DOE language "also does not reserve any special right for Plaintiff to assert DOE contentions at a time of its choosing"); *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2267283, at *4 (E.D. Tex. May 24, 2017).  Google therefore understands that VirtaMove is not relying on any DOE theories for any element of the asserted claims.  Google will rely on that understanding moving forward in the case.

## '814 PATENT

VirtaMove's Infringement Contentions for the '814 Patent amount are deficient as they fail to put Google on notice as to what specific functionality is accused of meeting each element of each asserted claim. VirtaMove has largely reproduced the notice-pleading allegations it included in its complaints, with some mostly conclusory language added in some instances. A non-exhaustive list of such deficiencies is listed below:

**"[D]isparate computing environments"** (Claim 1). Claim 1 recites a "system having a plurality of servers with operating systems that differ, operating *in disparate computing environments*." VirtaMove does not specially identify any alleged disparate computing environments. For example, though VirtaMove contends "Google Kubernetes Engine and Cloud Run, as well as containers produced by Migrate to Containers, runs on individual servers," it is silent as to how or whether servers allegedly "operat[e] in disparate computing environments," or even what VirtaMove contends such "disparate computing environments" are in the context of the Accused Instrumentalities. *See, e.g.*, '814 Patent Claim Chart, Element 1pre, p. 1.

**"[S]ervers with operating systems that differ"** (Claim 1). Claim 1 requires that the servers have "operating systems that differ." VirtaMove claims that, "[o]n information and belief, there exist at least two GKE/Cloud Run servers that have different operating systems, for example Container-Optimized OS and Ubuntu." *See, e.g.*, '814 Patent Claim Chart, Element 1pre, p. 1. Is VirtaMove claiming that this element is satisfied because there are at least two servers across the entire GKE/Cloud Run ecosystem that have different operating systems?

**"Secure containers/"containers" (Claim 1).** The '814 patent provides a definition of a "container" at 2:32-42 and a definition of "secure application container" at 2:52-54. VirtaMove's claim chart does not attempt to show how any Accused Product meets the '814 patent's definitions of "container" and "secure application container." Does VirtaMove contend that these, and other definitions in the patents that it does not address, do not apply to the asserted claims?

**"[A]ssociated system files that remain resident on the server"** (Claim 1). Claim 1 requires that "associated system files" are "utilized in place of the associated local system files" [discussed further below] and "are copies or modified copies of the associated local system files that remain resident on the server." VirtaMove's claim chart mentions "[e]ach container includes the application software as well as a Linux user space required to execute the application, for example libc/glibc and other shared libraries, configuration files, etc. necessary for the application. For example, the container includes a base OS image, provided by Google or by a third party, such as a Debian, Rocky Linux, or Ubuntu base image." *See, e.g.*, '814 Patent Claim Chart, Element 1a, p. 7. But it is unclear what VirtaMove claims are "associated system files," and specifically what the "other shared libraries, configuration files, etc." are. *See id.* Additionally, VirtaMove does not identify what files "remain resident on the server," or what "server" they allegedly remain resident on. *See, e.g.*, '814 Patent Claim Chart, Element 1d, p. 26; Element 1e, p. 27. Rather, VirtaMove ignores these limitations entirely.

**"[A]ssociated local system files"** (Claim 1). VirtaMove's claim charts appear to allege that "libraries such as libc/glibc, configuration files, etc." are the "associated local system files."

3

*See, e.g.*, '814 Patent Claim Chart, Element 1a, pgs. 6-7. But this too is vague and open-ended as to what VirtaMove actually contends are the alleged "associated local system files." Nor does VirtaMove indicate what server they "remain resident on." Is it the server that is running a container or a different server?

VirtaMove also alleges for this element that the Accused Instrumentalities will perform certain behavior "in some cases" and perform alternate behavior "[i]n other cases." *See, e.g.*, '814 Patent Claim Chart, Element 1e, pg. 27. It is not clear what behavior falls into these "cases," what these "cases" are, and whether VirtaMove contends all of these behaviors infringe.

"**[L]ocal kernel <u>residing permanently</u> on one of the servers**" (Claim 1). VirtaMove mentions a Linux kernel, but is unclear as to whether that is the alleged "local kernel." Further, VirtaMove does not identify whether or how the local kernel "resid[es] permanently" on one of the servers. *See, e.g.*, '814 Patent Claim Chart, Element 1a, p. 7.

"**[S]ecure, executable, applications <u>related to a service</u>**" (Claim 1). VirtaMove does not identify what are the "secure, executable, applications related to a service." *See, e.g.*, '814 Patent Claim Chart, Element 1pre, p. 1. While VirtaMove does refer to various webpages that mention "applications" or "apps" generally, this does not provide notice as to which specific applications it is accusing, much less whether or how such application is "secure," "executable," or "related to a service"; VirtaMove does not even identify what the "service" allegedly is.

"**[A]pplications each include an <u>object executable</u> by at least some of the different operating systems for performing a <u>task related to the service</u>**" (asserted independent claim 1). VirtaMove provides no disclosure as to what it contends is the (1) "object executable" included with each application; and (2) any "task related to the service." *See, e.g.*, '814 Patent Claim Chart, Element 1pre, p. 1. Additionally, as explained above, VirtaMove has not identified anything as the alleged "service" of this limitation.

"**[A]pplication software <u>cannot be shared</u>**" (asserted independent claim 1). VirtaMove concludes that "each container has an isolated runtime environment." While it makes citations including references to isolation during runtime, it is unclear whether VirtaMove is accusing only what is referenced in these citations or something else. VirtaMove also does not otherwise contend that the application software within each container "cannot be shared" with the other containers so it is not clear what VirtaMove is accusing as to this limitation either, particularly because the very documentation relied upon by VirtaMove indicates that sharing does indeed occur. *See, e.g.*, '814 Patent Claim Chart, Element 1f, pp. 32-37.

"**[S]<u>toring in memory</u> accessible to at least some of the servers a plurality of secure containers of application software**" (Claim 1). It is unclear what memory VirtaMove is referring to. Is it referring to storage while a container is running or some other storage separate from runtime? *See, e.g.*, '814 Patent Claim Chart, Element 1a, p. 6-7.

"**[A]n <u>execution file</u> associated therewith for starting the one or more applications**" (Claim 2). VirtaMove claims that each container image has "an associated image configuration comprising information for starting the one or more applications." *See, e.g.*, '814 Patent Claim

4

Chart, Claim 2, p. 49.  It is unclear how VirtaMove contends that a container image's configuration file, such as the "Open Containers Initiative image configuration," is "an execution file associated therewith for starting the one or more applications."

"**[S]ystem files required for association**" (Claim 4).  VirtaMove does not identify any system files that are identified for claim 4.  Instead, VirtaMove states that "Google's Migrate to Containers feature identifies … *dependencies*."  *See, e.g.*, '814 Patent Claim Chart, Claim 4, p. 54.  To the extent that VirtaMove is alleging that the alleged "dependencies" are "system files," it has failed to provide any evidence of such.

Additionally, as explained above, VirtaMove does not address how Migrate to Containers allegedly meets any element of claim 1.  For example, VirtaMove contends that claim 4's "identification step happens before storing the containers having the migrated application and files in the target machine, as described above," but never describes what Migrate to Container's alleged "target machine" would be.  *See, e.g.*, '814 Patent Claim Chart, Claim 4, p. 54.  Therefore, claim 4, which depends on claim 1, cannot be satisfied by behavior performed by Migrate to Containers.

"**[A]ssigning a unique associated identity to each of a plurality of the containers**" (Claim 6).  VirtaMove alleges that this claim is met "in the case of a single container Pod," because in such a case the containers "have an associated hostname" that would then be unique.  *See, e.g.*, '814 Patent Claim Chart, Claim 6, p. 55.  Is VirtaMove contending that this claim would then only be met in the case of a single container Pod?  VirtaMove also alleges that "a Docker container has an IP address and a hostname," but provides no allegation, let alone evidence, that those values are unique to that container.

"**[S]aid application has no access to system files or applications in other containers or to system files within the operating system**" (Claim 10).  As explained above, the very documentation relied upon by VirtaMove in its charts indicates that sharing can occur between the container resources.  *See, e.g.*, '814 Patent Claim Chart, Claim 10, pp. 59-60.  Therefore, VirtaMove has failed to show that the application "has no access" to files in other containers or the operating system.

"**[A]ssociating with a plurality of containers a stored history**" (Claim 13).  The evidence VirtaMove cites for this claim references "Google Cloud Observability." This is not an accused product.  *See, e.g.*, '814 Patent Claim Chart, Claim 13, pp. 60-61. Please clarify what VirtaMove is accusing for this claim.

"**[T]he step of creating containers prior to said step of storing containers in memory**" (Claim 14).  For this claim, VirtaMove claims that "GKE, Cloud Run, and Migrate to Containers support the creation of containers and deploying the containers on the server."  *See, e.g.*, '814 Patent Claim Chart, Claim 14, p. 62.  Yet VirtaMove identifies no functionality of GKE or Cloud Run that is responsible for "the creation of containers," and no functionality of Migrate to Containers that is responsible for "deploying the containers on the server."  As noted above, VirtaMove provides no substantive allegations for Migrate to Containers for any other claim making this particularly confusing.

5

**"[C]opying applications and associated system files to memory"** (Claim 14). VirtaMove contends that containers are "first created and then later deployed/stored on the servers," but as explained above, it is unclear whether VirtaMove is referring to storage while a container is running or some other storage separate from runtime. *See, e.g.*, '814 Patent Claim Chart, Claim 14, p. 62. VirtaMove also contends that the applications are copied "to a location in the target server," but has not identified anything as the alleged "target server." *Id.* Finally, VirtaMove claims that "the migrated files are stored as different instances in memory accessible to containers," but provides no explanation of what memory it is actually referring to that the files are allegedly stored in.

\*\*\*

In addition to the limitations identified above, VirtaMove has also failed to specify *who* it alleges is actually performing the claimed method. For some limitations, Google claims that "Google and/or its customer practices" the method (*see, e.g.*, '814 Patent Claim Chart, Element 1pre p. 1), but in others, VirtaMove only claims that the method is "practiced by Google" (*see, e.g.*, '814 Patent Claim Chart, Element 1b p. 22). VirtaMove's failure to properly identify an alleged infringer prejudices Google's ability to develop its defenses related to direct and/or indirect infringement.

### **'058 Patent**

VirtaMove's Infringement Contentions as to the '058 Patent are similarly infirm and conclusory, failing to identify VirtaMove's theory for where in the Accused Instrumentalities each element of each claim can be found.

**"A computing system for executing a plurality of software applications comprising: a) a processor"** (laim 1). VirtaMove merely cites to statements that "[c]ontainers virtualize CPU" and that "containers on a single node share one copy of the operating system and don't each require their own OS image and vCPU, resulting in a much smaller memory footprint and CPU needs." '058 Patent Claim Chart, Element 1a, pgs. 3-4. But what exactly VirtaMove is identifying as the processor? Is it software or hardware?

**"[O]perating system kernel having OS critical system elements (OSCSEs) for running in kernel mode"** (Claim 1). VirtaMove provides no guidance as to what it contends are the claimed OSCSEs  For example, while VirtaMove includes a screenshot which discusses "glibc," is this what VirtaMove is saying is the OSCSE? That VirtaMove refers to "glibc" in reference to numerous separately claimed elements makes this particularly confusing. *See, e.g.*, '058 Patent Claim Chart, Element 1b, p. 7. VirtaMove's claim chart does not attempt to show how any Accused Product meets the '058 patent's definition of "Critical System Element (CSE)"  Does VirtaMove contend that these, and other definitions in the patents that it does not address, do not not apply to the asserted claims?

**"[A] shared library having shared library critical system elements (SLCSEs)"** (Claim 1). VirtaMove does not specify what it contends is the claimed shared library or the claimed SLCSEs. Is VirtaMove pointing to "base image" as the claimed shared library?. *See, e.g.*, '058

6

Patent Claim Chart, Element 1c, p. 5.; Element 1d, p. 17. And is VirtaMove accusing any base image or some particular set of base images? Additionally, VirtaMove states that "a base image serves as a self-contained unit that encompasses all the necessary components for an application to run, including the application code, runtime environment, system tools, and dependencies (i.e., SLCSEs)." '058 Patent Claim Chart, Element 1d, pg. 20. But it is not clear what the "SLCSEs are because it is unclear what the "i.e." applies to. Is the i.e. intended to mean just the "dependencies" (which is itself unclear) are SLCSEs or is it all or some subset of "the application code, runtime environment, system tools, and dependencies (i.e., SLCSEs)." This is particularly unclear given that VirtaMove also states that "[e]ach container image is based on a specific base image, which contains the application code, and dependencies, including system libraries or shared library critical system elements (SLCSEs)." *Id.* It is not clear whether this is saying the dependencies are the SLCSEs or whether the dependencies include system libraries or SLCSEs.

**"[W]herein some of the SLCSEs stored in the shared library are functional replicas of OSCSEs"** (Claim 1). In its infringement contentions for this limitation, VirtaMove does not identify how the alleged SLCSEs are "functional replicas" of the alleged OSCSEs. VirtaMove states that "a base image serves as a self-contained unit that encompasses all the necessary components for an application to run, including the application code, runtime environment, system tools, and dependencies (i.e., SLCSEs)." '058 Patent Claim Chart, Element 1d, pg. 20. VirtaMove also states that "[t]he images are based on existing Linux distributions, such as Debian and Ubuntu, including essential system elements (i.e., functional replicas of OSCSEs)." *Id.* Does VirtaMove contend that the base image is the functional replica or does VirtaMove contend that the runtime instance is the functional replica?

**"[W]hen one of the SLCSEs is accessed by one or more of the plurality of software applications it forms a part of the one or more of the plurality of software applications"** (Claim 1). VirtaMove does not identify any of the SLCSE's forming a part of "one or more" software applications, nor does it identify "when one of the SLCSEs is accessed by one or more of the plurality of software applications" as required by claim 1. *See, e.g.*, '058 Patent Claim Chart, Element 1d, pgs. 16-17. VirtaMove merely contends that Google provides OS images for use in customized containers but is silent to SLCSE's forming a part of one or more software applications. *See id.* Please identify specifically what VirtaMove contends satisfies the claimed SLCSE's "forming" "a part of" "one or more" software applications as well as how any alleged structure operates "when one of the SLCSEs is accessed by one or more of the plurality of software applications."

**"[W]herein an instance of a SLCSE provided to at least a first of the plurality of software applications from the shared library is run in a context of said at least first of the plurality of software applications without being shared with other of the plurality of software applications** (Claim 1). VirtaMove does not identify what functionality allegedly maps to the claimed instance of a SLCSE provided to at least a first of the plurality of software applications from the shared library. Rather, VirtaMove states that "[w]hen a Docker or Kubernetes image is used to create a container, it creates a separate and isolated instance of a runtime environment which is independent of other containers running on the same host." '058 Patent Claim Chart, Element 1e, pg. 34. But this says nothing about "an instance of a SLCSE." Please identify specifically what VirtaMove contends satisfies the claimed "instance of a SLCSE provided to at

7

least a first of the plurality of software applications." Additionally, VirtaMove states that "[t]he containers run in isolation, ensuring that the SLCSEs stored in the shared library are accessible to the software applications running in their respective containers." *Id.* But VirtaMove does not explain how, if the containers are run in isolation, the SCLCEs stored in the shared library can be accessible to applications running in their respective containers. What VirtaMove implies is that it is the "base image" that is "accessible to the software applications running in their respective containers." Please confirm whether VirtaMove is relying on the "base image" to meet this limitation. And if not, what it is pointing to.

**"[W]herein a SLCSE related to a predetermined function is provided to the first of the plurality of software applications for running a first instance of the SLCSE, and wherein a SLCSE for performing a same function is provided to the second of the plurality of software applications for running a second instance of the SLCSE simultaneously** (Claim 1). VirtaMove does not identify what functionality allegedly maps to the claimed "SLCSE related to a predetermined function … for running a first instance of the SLCSE" and a "SLCSE for performing a same function … running a second instance of the SLCSE simultaneously" (emphasis added). VirtaMove only vaguely points to "a base image includes essential system files, libraries, and dependencies (i.e., SLCSEs)." '058 Patent Claim Chart, Element 1f, pg. 39. But what is the "predetermined function" to which the alleged "SLCSE," is "related." And what is VirtaMove pointing to as the requisite "predetermination" of this function? Additionally, the claim requires that "a SLCSE related to a predetermined function is provided to the first plurality of software applications." VirtaMove states that [w]hen an image is used to create a container in the Accused Instrumentality, an instance of the SLCSE is provided to a software application." *Id.* Is VirtaMove contending that the creation of a container, as opposed to something that is occuring while a container is running, meets this portion of the claim limitation? What is then "providing" the SLCSE to the first of the plurality of software applications as recited in the claim?

**"[W]herein in operation, multiple instances of an SLCSE stored in the shared library run simultaneously within the operating system"** (Claim 2) VirtaMove does not identify what allegedly maps to the claimed "multiple instances of an SLCSE stored in the shared library run simultaneously within the operating system." *See, e.g.*, '058 Patent Claim Chart, Claim 2, pgs. 42-48. While VirtaMove provides Docker and Kubernetes screenshots regarding multiple containers being run at the same time (*id.*), the claim chart provides no insight as to how VirtaMove contends that multiple instances of an SLCSE stored in the shared library can be run simultaneously, adding to the confusion regarding this element above.

**"[W]herein the one or more SLCSEs provided to one of the plurality of software applications having exclusive use thereof, use system calls to access services in the operating system kernel."** (Claim 4) VirtaMove does not identify what allegedly maps to the claimed "SLCSE's provided to one of the plurality of software applications having exclusive use thereof." *See, e.g.*, '058 Patent Claim Chart, Claim 4, p.51. VirtaMove states that "the glibc library (or other similar library) in the container uses system calls to interface with the host Linux kernel," but does not identify what limitation(s) within claim 4 are allegedly met by "glib." *See, e.g.*, '058 Patent Claim Chart, Claim 4, p. 51.

8

**"A computing system   according to claim 2 wherein  SLCSEs stored in the shared library are linked to particular software applications of the  plurality of software applications as the particular  software applications are  loaded such that the particular software applications have a  link that provides unique  access to a unique instance of a CSE."** (Claim 10) In its Infringement Contentions for this claim, however, VirtaMove does not identify how "SLCSEs stored in the shared library *are linked* to particular software applications of the plurality of software" or how "the particular  software applications *have a  link that provides unique access to a unique instance of a CSE.*" *See, e.g.*, '058 Patent Claim Chart, Claim 10, p.56. Please identify specifically how VirtaMove contends the Accused Instrumentalities meet these claim requirements.

**"A computer system as defined in claim 2 wherein SLCSEs are not copies of OSCSEs."  VirtaMove merely states that "the SLCSEs are provided to the computer system through a separate process than the process by which the OSCSEs are provided to the computer system, and thus are not copied from the OSCSE."** Claim 18) '058 Patent Claim Chart, Claim 18, pp.59-60.  This statement does not identify the alleged "separate process" or identify elements of the Google system that map to the SLCSE's and OSCSE's as discussed above. *Id.* at pp.59-62.

For at least these reasons, VirtaMove's contentions fail to give Google any notice of any comprehensible theory of infringement as to the '058 patent.

### EARLIEST DATE OF INVENTION/RELATED DOCUMENTS

OGP § I requires that VirtaMove identify "the priority date (i.e. the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention."  OGP § I.  VirtaMove states: "The Asserted Claims of the '814 patent are entitled to a priority date at least as early as September 15, 2003, the filing date of provisional application No. 60/502,619. The Asserted Claims of the '058 patent are entitled to a priority date at least as early as September 22, 2003, the filing date of provisional application No. 60/504,213."  This does not comply with OGP § I, which by its terms requires VirtaMove to identify *the* "earliest" date of invention, not an "at least as early as" date.  And while VirtaMove states a "diligent search continues for additional responsive information," OGP § I requires VirtaMove to have already provided such documents.  Google will object to any attempt by VirtaMove to assert earlier dates than those identified in its PICs or otherwise revise or supplement its contentions contrary to OGP § I.

*       *       *

For the reasons stated above, VirtaMove's Infringement Contentions do not meet the requirements of OGP § I.  Please promptly confirm that VirtaMove will remedy the identified issues and provide a timeline for doing so in the near future.  If VirtaMove is unwilling to do so, please provide your availability this week to meet and confer about these issues.

Very truly yours,

/s/
David A. Perlson

01980-00227/15093466.1