Exhibit 1

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00093-JRG |
| | § | (LEAD CASE) |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00064-JRG |
| | § | (MEMBER CASE) |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | Redacted Public Version |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Hewlett Packard Enterprise Company's ("HPE") Opposed Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 87.) Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the Court is of the opinion that the Motion should be **DENIED**.

## I. BACKGROUND

On February 9, 2024, Plaintiff VirtaMove Corporation ("VirtaMove") filed this action against HPE, alleging infringement of U.S. Patent Nos. 7,519,814 and 7,784,058 (the "Asserted Patents"). (Dkt. No. 1.) VirtaMove accuses HPE of infringing the Asserted Patents, which generally relate to software for the "containerization" of computer applications, via Accused Products such as HPE's Ezmeral Runtime Enterprise ("ERE") and HPE's GreenLake. (Dkt. No. 87 at 1-2.)

VirtaMove also brought suit against IBM in the Eastern District of Texas on January 31, 2024, alleging infringement of the Asserted Patents. (Member Case No. 2:24-cv-00064; Dkt. No. 1.)  On April 17, 2024, VirtaMove's suit against HPE was consolidated for pretrial purposes with its suit against IBM. (Dkt. No. 32.)  In addition to suits against HPE and IBM, VirtaMove brought actions against Amazon.com, Inc. and Google LLC in the Western District of Texas, alleging that their services using Kubernetes and Docker software infringe the Asserted Patents. (Dkt. No. 78 at 3.)

On August 5, 2024, an independent subsidiary of IBM known as Red Hat filed suit against VirtaMove in the Northern District of California seeking a declaratory judgment of non-infringement of the Asserted Patents.  (Dkt. No. 78 at 13; *See Red Hat, Inc. v. VirtaMove Corp.*, No. 5:24-cv-04740 (N.D. Cal. August 5, 2024, Dkt. No. 1).) On August 21, 2024, IBM filed its Motion to Transfer to the Northern District of California. (Dkt. No. 78.)  On October 14, 2024, almost eight months after VirtaMove filed this suit for patent infringement, HPE filed its Motion to Transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 87.)

## II.   LEGAL STANDARDS

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*.  The public interest factors include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id*.

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District.  *Id.*  Absent such an elevated showing, the plaintiff's choice of venue must be respected. *Id.*; *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected.  When a defendant is haled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.") (internal quotation marks and footnotes omitted).

Accordingly, transfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party "clearly establishes good cause." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). "Good cause" is established when the movant shows that "the marginal gain in convenience will be *significant*," and its evidence "makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue."  *Id.*  Furthermore, when deciding a motion to transfer under § 1404(a), the Court may consider "undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party."  *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019).

Importantly, the convenience transfer questions must be decided as of the filing of the lawsuit, not the time the 1404(a) motion is filed or decided.  *See, e.g., In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'").  Just as patent invalidity must be based on what a POSITA knew and understood at the time the patent application was filed, a motion to transfer for convenience must often be analyzed many months prior to the time a decision is rendered.  This

Court has considered the facts and circumstances relating to convenience as of February 9, 2024—almost a year ago.  The challenge in doing so is, in this case, exacerbated by HPE's delay of almost eight months in bringing this Motion.

## III.    DISCUSSION

HPE seeks transfer of the above-captioned Lead Case from this District to the Northern District of California on convenience grounds pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 87 at 1.)

### A.    The Threshold Inquiry - Jurisdiction in the Proposed Transferee Court

The threshold inquiry to a motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. VirtaMove does not dispute that the Complaint could have been filed in the Northern District of California.  (*See* Dkt. No. 102; Dkt. No. 107.)  Accordingly, the Court finds that this threshold question is satisfied and turns next to the underlying questions of convenience as they existed when this action was first brought.

### B.    The Private Interest Factors

#### 1.    The Relative Ease of Access to Sources of Proof

This factor focuses on the location of documents and physical evidence relating to the case. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).  Notwithstanding well-known advances in technology including the digitization of data, courts largely continue to focus on the relevance of the physical location of these sources. *See, e.g., In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 316 (5th Cir. 2008); *In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *3 (Fed. Cir. May 23, 2022).  However, it is now recognized that when most of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis.  *In re TikTok, Inc.*, 85 F.4th at 358–59 (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Moreover, the parties must specifically identify and locate

4

the sources of proof and explain their relevance. *Enovsys LLC v. T-Mobile USA, Inc*., No. 2:21-CV-00368-JRG, 2022 WL 2161028, at *2 (E.D. Tex. June 14, 2022); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017).

The Court finds that this factor is neutral. The location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is purely physical in nature. *See Volkswagen II*, 545 F.3d at 316-17; *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Here, the majority of evidence is digital and stored electronically, and therefore equally accessible in either forum.[1] Importantly, though HPE claims that the "bulk of HPE's evidence is concentrated" in the Northern District of California, HPE has not met its burden of specifically identifying and locating identified sources of proof and then explaining their relevance, so as to show that any gain in convenience from transfer would be material. (Dkt. No. 87 at 1; *In re Clarke*, 94 F.4th at 508 (explaining that "good cause" is established when the movant shows that "gain in convenience will be significant"); *Enovsys LLC*, 2022 WL 2161028, at *2 ("Parties must specifically identify and locate sources of proof and explain their relevance."); *Utterback*, 716 F. App'x at 245 ("Utterback fails to identify with any specificity . . . what evidence would be inaccessible in Mississippi but readily available in Florida. Without more, we cannot credit such vague and conclusory assertions.").) Consequently, this factor is neutral in the transfer analysis.

### 2. The Availability of Compulsory Process

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal Rule of Civil Procedure

---

[1] To the extent, if any, that the "bulk of HPE's evidence" actually ties to relevant and discoverable evidence, HPE fails to assert that such exists only in non-digital form. Consequently, the Court fairly concludes that if any specific records exist—which is an unaddressed question—they are digital and accessible from anywhere with ease.

45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person;" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1). As for party witnesses, a court may issue subpoenas "within the state where the person resides, is employed or regularly transacts business in person." *Id.* Since party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards *unwilling third-party* witnesses." *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-CV-79, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (citing *Volkswagen II*, 545 F.3d at 316) (emphasis added). Further, the availability of compulsory process or subpoena power to secure the attendance of unwilling witnesses "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (citations omitted).

In its Motion, HPE contends that this factor weighs in favor of transfer because more third-party witnesses reside in the Northern District of California than in this District. (Dkt. No. 87 at 8; Dkt. No. 105 at 1.) The first set of third-party witnesses that HPE identifies are those that developed and have knowledge of the accused Kubernetes and Docker functionality. (Dkt. No. 87 at 7-8.) Specifically, HPE identifies Solomon Hykes, Jessie Frazelle, Tonis Tiigi, and Derek McGowan as witnesses who currently live and work in the Northern District of California. (*Id.* at 3 (citing Dkt. Nos. 78-10, 78-11; Dkt. Nos. 87-13, 87-14, 87-15).) VirtaMove argues that HPE has failed to show that these team members possess any relevant testimony given that the "independent development of technology by Docker and Kubernetes is not likely to be an issue for trial." (Dkt. No. 102 at 9.) Rather, VirtaMove contends that experts will opine on whether HPE's *specific* deployment of Docker/Kubernetes infringes the Asserted Patents. (*Id.*) Although HPE identifies

6

Solomon Hykes, Jessie Frazelle, Tonis Tiigi, and Derek McGowan as unwilling witnesses residing in the Northern District of California, the Court is not convinced that HPE has shown that all of these witnesses have relevant, non-redundant testimony that will actually materialize at trial, especially given that the independent development of technology by the Kubernetes and Docker team is not likely to be an issue for trial. It appears to the Cour that these are "background witnesses" who may describe the development of Docker / Kubernetes but not join issue on the meaningfully contested issues at trial. This group also appears to be redundant with one or two of these, at most, likely to be called at trial. Further, this factor is not controlled by the raw counting of the number of knowledgeable people, but what they know, how relevant it is, and if they are redundant.

A second set of witnesses identified are inventors of prior art. (Dkt. No. 87 at 8.) Specifically, HPE identifies Jonathan Clark, Andrew Tucker, John Beck, Daniel Price, Steven Osman, and Dinesh Subhraveti as unwilling third-party witnesses and asserts that they reside in the Northen District of California. (*Id.* (citing Dkt. No. 78-12).)

As a preliminary matter, VirtaMove argues that while the publications and publicly released software attributable to these inventors may be relevant prior art, HPE has not provided any reason why the testimony of those inventors is relevant. (Dkt. No. 102 at 9.) Further, VirtaMove correctly argues that inventors of prior art rarely appear in court, lessening any weight the Court should give these potential witnesses. (*Id.*) This Court notes, however, that the Federal Circuit has disapproved of the discounting of prior art witnesses based solely on the "categorical assumption" that defendants are likely to call few, if any, prior art witnesses that are identified in the transfer motion and when such assumption is "entirely untethered to the facts of [the] case." *In re Juniper Networks, Inc*., 14 F.4th 1313, 1319 (Fed. Cir. 2021). Here, however, VirtaMove does not ask the

Court to make a categorical assumption. Rather, VirtaMove argues that given the realities of a timed civil jury trial, HPE will likely only assert its single best prior art at trial. (Dkt. No. 102 at 9.) VirtaMove contends, therefore, that HPE is unlikely to select the prior art for a California-based inventor given that the prior art concerning Tucker, Beck, and Price makes up only 10% of the prior art references against the '814 Patent and is not identified against the '058 Patent, and the prior art concerning Osman makes up approximately only 3% of the prior art references against the '814 Patent and is not identified as prior art against the '058 Patent. (*Id.* at 10.)

VirtaMove further argues that the HPE puts forward no evidence that Jonathan Clark is located in the Northern District of California. (Dkt. No. 102 at 10.) VirtaMove says that HPE informed it that the residence of Jonathan Clark was "unknown" as of October 10, 2024, when HPE served its Second Supplemental Initial and Additional Disclosures. (Dkt. No. 102-2 at 13.) The Court notes that HPE's same Disclosures also state that the location of Andrew Tucker, Daniel Price, Steven Osman, and Dinesh Subhraveti are "unknown." (*Id.*)[2] HPE responds only that Mr. Clark's LinkedIn page, as of August 21, 2024, shows he works at Innerscene, which is located in the Northern District of California. (Dkt. No. 105 at 2 (citing Dkt. No. 78-12).)

When deciding a motion to transfer under § 1404(a), the Court "must resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019). The lack of precise and reliable information for

---

[2] HPE claims that these witnesses reside in the Northern District of California. (*See* Dkt. No. 87 at 8.) However, the exhibits that HPE cites to identify the location as to Jonathan Clark, and the locations where the prior art was developed and not the residence / location of these witnesses. (*Id.* (referencing section I.B.3, which cites Dkt. No. 78-12 (identifying Clark as an employee of Innerscene, which is located in the Northern District of California); *c.f.*, Dkt. Nos. 78-14 (identifying only where the "FreeDSB" prior art was developed, not the location of any identified witness), 78-15 and 78-16 (identifying only where the "Virtuozzo" prior art was developed, not the location of any identified witness), 87-16, 87-17, and 87-18 (identifying "Solaris" as being developed by Sun Microsystems, not the location of any identified witness).) HPE has not met its burden of establishing the residence of these witnesses as required. *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) ("It is the movant's burden—and the movant's alone—to "adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.").

these witnesses (particularly relating to residence location of the witnesses) makes it difficult for the Court to fairly weigh their presence in the transfer analysis. *See In re Clarke*, 94 F.4th at 508 (requiring the movant to show that gains in convenience will be significant and that its evidence makes it plainly obvious that those gains will actually materialize). This unmet burden rests on HPE.

Even if HPE had shown that these witnesses reside in the Northern District of California, HPE has not met its burden of showing that these prior art inventors are, in fact, likely to testify at trial, as discussed above. Therefore, any weight these witnesses might otherwise have on the transfer analysis is appropriately lessened.[3]

In regard to this same factor, VirtaMove contends two of its former employees living in Texas are subject to this Court's compulsory process. (Dkt. No. 102 at 8-9.) Specifically, VirtaMove contends that David Roth and Ernesto Benedito have knowledge about the VirtaMove product that HPE accuses of being subject to a marking requirement and can only be compelled to attend trial in the Eastern District of Texas because they reside near Dallas, Texas, and are subject to the geographic limits of Fed. R. Civ. P. 45(c)(1)(B)(ii). (Dkt. No. 102 at 8-9; Dkt. No. 82-14 at 1; Dkt. No. 82-15 at 1.) Taking these statements as true, these witnesses weigh against transfer.

Weighing the unwilling witnesses in totality for each of the parties, along with the likelihood that any gain in convenience might actually materialize at trial, this factor weighs, on balance, only very marginally in favor of transfer.

---

[3] VirtaMove also argues that any weight these witnesses have should be reduced because one of the prior art patents—the 8,032,625 patent—lists all four of its named inventors as residing in Austin, Texas, when the application was granted in 2011. (Dkt. No. 102 at 10 (citing Dkt. No. 102-20).) The Court cannot reasonably infer that these witnesses in Austin, Texas would somehow be subject to the Court's compulsory process more than a decade later. *See Hammers*, 2019 WL 6728446, at *4 (stating that the Court "must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party").

### 3.       Cost of Attendance of Willing Witnesses

The third private interest factor considers the cost of attendance for both party witnesses and willing third-party witnesses. The Federal Circuit has described this factor as being especially important. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).  The Fifth Circuit has established a so-called "100-mile rule," which explains that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when the distance between the existing venue for trial and proposed trial venue exceeds 100 miles. *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343.  This is because a substantial distance to travel means added travel time together with more meal and lodging expenses.  *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023).

HPE contends that this factor weighs in favor of transfer. (Dkt. No. 87 at 11-13.) In support, HPE reurges some of the previously identified inventors of prior art and multiple members of the Kubernetes development team and Docker development team—Solomon Hykes, Jessie Frazelle, Tonis Tiigi, and Derek McGowan—as residing in the Northern District of California. (*Id.* (citing Dkt. No. 87 at 2-4.)  The Court, however, has already considered these witnesses under the second private interest factor.  As this Court has noted previously, such double-counting is improper.  *E.g., Emerging Auto. LLC v. Kia Corp*., No. 2:23-cv-00434-JRG, 2024 WL 3170398, at *11 (E.D. Tex. June 25, 2024).  Either these witnesses require compulsory process to secure their attendance (assessed under the second private interest factor) or they are willing witnesses (assessed under the third private interest factor).  They cannot be both.  *See In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) ("[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling.") As this Court has already considered these witnesses under the second private interest factor, the Court will not improperly double-count these witnesses under the third private interest factor. *See In re*

*Apple Inc.*, 979 F.3d at 1340 (cautioning against "inappropriately count[ing] twice" the convenience of witnesses under multiple factors).

HPE also contends that the "locus of the relevant technical team," including former employees of BlueData (the company that HPE acquired and that originally developed portions of the underlying ERE technology) is the Northern District of California. (Dkt. No. 87 at 12.) HPE claims to have 72 engineering employees that work on the ERE technology team. (Dkt. No. 87 at 12-13 (citing Dkt. No. 87-1 at ¶ 5).) However, of those 72 employees, HPE specifically identifies only David Lee (the Director for Enterprise Software Solutions) and Mohan Rajagopalan (the General Manager of ERE) as residing in the Northern District of California. (Dkt. No. 87-1 at ¶ 3, 15.) HPE then admits that all but 13 of the 72 employees on the ERE team are located outside California, in places like Texas, Massachusetts, New York, North Carolina, India, and Canada. (Dkt. No. 87-1 at ¶ 7.) With respect to those outside of California, HPE admits that Simham Naveenam resides in Texas (specifically, in this district), but contends that he does not work on ERE's integration of Docker or Kubernetes and his knowledge is cumulative of others on the ERE team. (*Id.*) When multiple witnesses have cumulative knowledge of the same matters and some reside in the original district while others reside in the proposed transferee district, a movant should not be able to rely on those elsewhere and effectively cherry pick the witnesses from the transferee district.

HPE identifies other employees as residing in the Northern District of California. (Dkt. No. 87 at 12-13; Dkt. No. 87-1.) These include Scott Norton (one of its employees knowledgeable about HPE's HP-UX prior art), Joann Starke (the Senior Marketing Manager for ERE), Tanuj Mittal (the VIP of Revenue Operations for HPE Ezmeral Software), Abraham Sharp (a technologist responsible for ERE customer support), and Dave Hawley (the project lead for Greenlake for

Private Cloud Enterprise) all of whom reside in the Northern District of California. (Dkt. No. 87-1 at ¶ 11, 14, 15.) VirtaMove contends that there is no evidence that these individuals will need to testify. (Dkt. No. 102 at 6.)

HPE also admits that several employees reside in Texas. (Dkt. No. 87 at 13; Dkt. No. 87-1.) These include Venkata Seshu (the Product Manager for ERE) who works from ▮▮▮▮ Texas, and his 22 team members who work from locations such as New Jersey, Florida, Massachusetts, as well as overseas from places such as Greece. (*Id.* at ¶ 9.) These also include Michael Bower (the Head of Global Ezmeral Software Sales Operations) who works from and resides in this district. (*Id.* at ¶ 12.) HPE argues that these employees are less relevant because they do not work on the ERE engineering team, but admits that they have potentially relevant technical, product management, or sales knowledge. (Dkt. No. 87 at 5, 13.)

VirtaMove contends that this factor weighs against transfer because many witnesses would find the Eastern District of Texas more convenient. (Dkt. No. 102 at 5-7.) Specifically, VirtaMove contends that its active employees—Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antonie, and Emanuel Sousa—would find the Eastern District of Texas more convenient because they all reside in Eastern Canada, which is closer to Texas than to California. (Dkt. No. 102 at 6; Dkt. No. 82-5 at 9; Dkt. No. 102-15 at 11; Dkt. No. 102-11.) Similarly, VirtaMove represents that its former employees, including three of the named inventors of the Asserted Patents—Paul O'Leary, Dean Huffman, and Mark Woodward—also reside in Eastern Canada and a fourth—Greg O'Connor—resides in Massachusetts. (Dkt. Nos. 102 at 8, 102-7, 102-8, 102-5, 102-4.) VirtaMove states that these witnesses are willing to attend trial in the Eastern District of Texas because travel to and lodging in Marshall, Texas is "substantially less expensive" than travel to and lodging in the Northern District of California. (Dkt. Nos. 102 at 8, 102-7, 102-8, 102-5, 102-4.)

The distance from Eastern Canada to the Eastern District of Texas is approximately half the distance as to the Northern District of California.[4] (*Id.*) VirtaMove also notes that the lodging and meal costs in each venue, based on federal per diem rates, would be substantially less in the Eastern District of Texas. (*Id.*) The Court finds that transferring the case would result in considerable inconvenience for these nine willing witnesses.

VirtaMove specifically identifies several other HPE employees and argues they would find the Eastern District more convenient. (Dkt. No. 102 at 7.) Specifically, VirtaMove identifies Steve Shattuck (VP of Sales, Service, and Support for ERE) as residing in Fort Collins, Colorado;[5] Joe Baxter and Krishna Sagiraju (two engineers who played important roles in the design of ERE) who reside in Michigan and Massachusetts, respectively. (*Id.* (citing Dkt. Nos. 102-22, 102-21, 102-23).)

In total, five identified witnesses live in the Northern District of California, two witnesses live in this District, one lives in Texas outside this District, several others live in or near eastern Canada or the east coast of the United States, and some individuals live overseas. To summarize, the role and location of the willing witnesses is shown in the table below:

---

[4] The direct distance from Kanata, Canada to Marshall, Texas is 1,323 miles and the direct distance from Kanata, Canada to San Francisco is 2,435 miles. (Dkt. Nos. 102-7, 102-8, 102-5.)

[5] VirtaMove represents that Fort Collins, Colorado is 813 miles from Marshall, Texas, and 949 miles from San Francisco, California. (Dkt. No. 102-23 at ¶ 23.)

| Witness | Role | Location of Residence |
|---|---|---|
| David Lee | Director for Enterprise Software Solutions | Northern District of California |
| Mohan Rajagopalan | General Manager of ERE | Northern District of California |
| Unidentified Members of the 72 on the ERE Team | Engineering Employees on the ERE Team | ~13 in Northern District of California ~59 in Massachusetts, New York, North Carolina, India, and Canada. |
| Simham Naveenam | Engineering Employee on ERE Team, primarily works on storage integration | Eastern District of Texas |
| Scott Norton | HPE Employee knowledge about HPE's HP-UX prior art | Northern District of California |
| Joann Starke | Senior Marketing Manager for ERE | Northern District of California |
| Dave Hawley | Project Lead for Greenlake for Private Cloud Enterprise | Northern District of California |
| Venkata Seshu, and his 22 reports | Product Manager for ERE, Reporting Members | ███ Texas, New Jersey, Florida, Massachusetts, and Greece |
| Michael Bower | Head of Global Ezmeral Software Sales Operations | Eastern District of Texas |
| Steve Shattuck | VP of Sales, Service, and Support for ERE | Fort Collins, Colorado |
| Joe Baxter Krishna Sagiraju | Engineers who played important roles in the design of ERE | Michigan Massachusetts |
| Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antonie, and Emanuel Sousa | VirtaMove CEO VirtaMove Office Manager VirtaMove Director of Technology VirtaMove IT Manager VirtaMove Senior Technical Specialist | Ontario, Canada Ontario, Canada Ontario, Canada Ontario, Canada Ontario, Canada |
| Paul O'Leary, Dean Huffman, and Mark Woodward | Named inventors of asserted patents and former employees at VirtaMove | Kanata, Ontario, Canada Kanata, Ontario, Canada Lyndhurst, Canada |
| Greg O'Connor | CEO of VirtaMove's predecessor | Massachusetts |

Consequently, for all identified witnesses other than the five that reside in the Northern District of California (and perhaps the one that lives in Colorado), transfer will increase travel inconvenience. Nevertheless, HPE asks this Court to disregard the inconvenience to these witnesses because they "will have to travel a significant distance to either venue." (Dkt. No. 87 at 12.) The Court disagrees that such significant discounting is warranted. If the case remains in this District, many witnesses only "would have to travel approximately half the distance to attend trial," which is a factor that the Federal Circuit has considered in a § 1404 analysis. *See Genentech*, 566 F.3d at 1344, 1345. The Court is mindful of the Federal Circuit's guidance not to give such

witnesses "too much significance." *In re Apple*, 979 F.3d at 1343. However, that is no reason to

discount the material inconvenience to these individuals, as HPE would have the Court do.

Even without counting any of the 59 unidentified employees residing closer to this District

in Massachusetts, New York, North Carolina, India, and Canada who work as engineers on the

ERE Team, or any of the 22 unidentified employees residing closer to this District in New Jersey,

Florida, Massachusetts, and Greece who have information about the deployment and development

of ERE, the Court finds that this factor weighs against transfer.

### 4.    All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive

The fourth private interest factor addresses concerns rationally based on judicial economy.

*Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118, 2019 WL 6344267, at *6 (E.D. Tex. Nov.

27, 2019).  Under this factor, the Court may consider any judicial economy benefits which would

have been apparent at the time the suit was filed, including co-pending lawsuits. *In re EMC Corp.*,

501 F. App'x 973, 976 (Fed. Cir. 2013).  The Court may also consider the timeliness of the filing

of the motion to transfer. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir.

2022) ("The district court was within its discretion to conclude that [defendant's] failure to seek

relief until late in the litigation weighed against transfer.").

Here, HPE claims that this factor favors transfer because VirtaMove has asserted the same

patents against different defendants in four lawsuits filed in the Eastern and Western Districts of

Texas, and this case is still in the early stages as *Markman* has not occurred.  (Dkt. No. 87 at

13-14.)[6]  HPE contends that transferring these four cases serves judicial economy because these

---

[6] HPE's contention that transferring this case promotes judicial economy, however, depends on its assumption that
IBM's request for transfer pursuant to 28 U.S.C. § 1404(a) will also be granted. If the Court finds that IBM's request
for transfer for convenience does not warrant transfer, then transferring this case would not promote judicial economy.
Instead, transfer would serve to duplicate many of the proceedings as well as increase the number of resources
expended by the Parties and the Court.

cases could be consolidated into one case in the Northern District of California with a pending declaratory action recently filed in the Northern District of California by one of IBM's independent subsidiaries, Red Hat. (*Id.* at 13-14.)

Despite HPE's arguments, it is notable that HPE waited more than eight months after the Complaint was filed to file this Motion to Transfer. (Dkt. No. 87.) During that time many resources were expended by the parties and the Court. These resources cannot be recouped to any degree and will be largely wasted if this case goes to the Northern District of California to start over at the back of the line in that district. Courts have denied similar motions to transfer under the "reasonable promptness" standard where the moving party has significantly delayed. *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-0134-JRG-RSP, 2017 WL 750290, at *7 (E.D. Tex. Feb. 27, 2017) (finding that this factor weighed against transfer when the defendant delayed filing the motion to transfer by more than six months); *Ralph v. Exxon Mobil Corp*. Case No. G-05-655, 2006 WL 2266258, at *4 (S.D. Tex. Aug. 8, 2006) (denying motion to transfer because it was brought "over six months after [the] case was filed"); *Norman IP Holdings, LLC v. Casio Computer Co*., No. 6:09-CV-270, 2010 WL 4238879, at *6 (E.D. Tex. Oct. 27, 2010) ("Defendants' delay in bringing this motion to transfer approximately five months after Defendants answered and nearly seven months after Defendants were served, transfer would unnecessarily prejudice Plaintiff"); *FTC v. Multinet Mktg., LLC*, 959 F. Supp. 394, 395-96 (N.D. Tex. 1997) (denying motion to transfer brought seven months after the plaintiff filed the action because it was not brought with "reasonable promptness" and would "likely to upset the discovery and trial schedule and waste judicial resources").

For these reasons, the Court finds that this private interest factor weighs against transfer.

### C.   The Public Interest Factors

#### 1.   Speedy and Efficient Administration of Justice

The first public interest factor concerns the speedy and efficient administration of justice. HPE does not dispute that the median time to trial in the Northern District of California is 27.3 months longer than in the Eastern District of Texas.  (Dkt. No. 102 at 15; Dkt. No. 105 at 5.) Instead, HPE argues that this factor should not alone outweigh all those other factors. (Dkt. No. 87 at 15; Dkt. No. 105 at 5.)  The Court agrees. This factor alone cannot dictate the disposition of HPE's motion, but this factor is fairly to be considered when weighing all the factors together. *See In re Juniper Networks, Inc*., 14 F.4th 1313, 1322 (Fed. Cir. 2021). This weighs against transfer.

#### 2.   Local Interest in Having Localized Interests Decided at Home

The second public-interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit."  *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir 2022) (cleaned up).  The proper analysis under this factor does not consider the parties' connections to the venue because the local interest analysis is a public interest factor.  *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024). Accordingly, the local-interest inquiry is concerned with the interest of non-party citizens in adjudicating the case. *Id.*

HPE contends that this factor favors transfer for two reasons.  (*See* Dkt. No. 87 at 14-15.)

HPE first contends this factor favors transfer because the accused Docker and Kubernetes functionality in HPE's ERE was developed in the Northern District of California and VirtaMove's willfulness allegations calls into question the reputations of the HPE employees who developed it. (Dkt. No. 87 at 14.)  VirtaMove argues, however, that "Fifth Circuit did away with the analysis of the . . . 'design and development' analysis" because "neither 'design' nor development' are 'events

17

that gave rise to a suit' for patent infringement under 35 U.S.C. § 271." (Dkt. No. 102 at 13-14 (citing *In Re Clark*, 94 F. 4th 502 and *In Re TikTok*, 85 F. 4th at 364).)

The Court disagrees with VirtaMove's contention that the Fifth Circuit did away with the "design and development" analysis. Indeed, the Fifth Circuit noted in *In re Clarke* that the District of Columbia had a local interest in the case because the party's "development and operations activities" occurred there, though ultimately the Court held that this factor was neutral. 94 F.4th at 512. In the context of patent infringement, the events giving rise to a suit for infringement occur not only where an infringing product is used, offered for sale, or sold, but also where that infringing product is made. 35 U.S.C. 271(a); *see, e.g., R2 Solutions LLC, v. Databrick Inc*., No. 4:23-CV-1147, 2024 WL 4932719, at *6 (E.D. Tex. Dec. 2, 2024). Therefore, the Court may properly consider where the accused products were made when weighing the local interests.

However, the Court must be wary of double-counting other factors already considered, such as the locations of the witnesses that designed and developed the accused products or the locations of physical evidence. Moreover, the Court reiterates the fundamental principle that the local interest factor is properly focused on the interest of "non-party citizens." *See In re Clarke*, 94 F.4th at 511. As such, this factor is not concerned with the interest and reputation of HPE's own employees, as HPE would have the Court consider.

HPE next contends that transfer is warranted because the Eastern District of Texas has little, if any, local interest. (Dkt. No. 87 at 15.) HPE argues that the Asserted Patents were not developed nor prosecuted in this District, nor were the Accused Products developed here. (*Id*.) VirtaMove argues that the local interest factor does not favor transfer because HPE's products and VirtaMove's products are sold nationwide. (Dkt. No. 82 at 12 (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("[T]he sale of an accused product offered nationwide

does not give rise to a substantial interest in any single venue.") (internal citations omitted)).  As additional support, VirtaMove argues that a nationwide injunction would affect citizens of the Eastern District of Texas just as much as it would affect citizens of the Northern District of California.  (Dkt. No. 109-1 at 5.)  The Court agrees that this district has a local interest.

The question is whether one district has a greater local interest than the other when the Accused Products are sold nationwide. The Fifth Circuit has recently addressed a similar situation in *In re Chamber of Commerce of United States of America.* 105 F.4th 297, 308 (5th Cir. 2024). There, though the case concerned a challenge to an agency's Final Rule promulgated in the District of Columbia, the Fifth Circuit held where the rule was promulgated did not create a "localized" interest favoring transfer to the District of Columbia because it would affect credit card issuers and customers nationwide. *Id.*  Likewise, if the Court were to grant an injunction in this case, that would affect third parties across the nation. *See In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 308–09 (5th Cir. 2024) (noting that "plaintiffs seek nationwide injunctions . . . to block the effect across the nation").  Furthermore, if this action results in the Asserted Patents being invalidated, that too would have a separate but different nationwide effect.

After considering the local interests of non-party citizens, including those that developed and contributed to the open-source third-party Kubernetes and Docker functionality, this factor, on balance, weighs only slightly in favor of transfer.

### 3. Familiarity of the Forum with the Governing Law

HPE does not dispute that this factor is neutral.  (Dkt. No. 87 at 15.)

### 4. Avoidance of Unnecessary Problems of Conflict of Laws

The last public interest factor seeks to avoid "unnecessary problems of conflict of laws." *Def. Distributed v. Bruck*, 30 F.4th 414, 436 (5th Cir. 2022).  While HPE argues that this factor

19

favors transfer for the same reasons it contended regarding the fourth private interest factor, the Court finds no reason to double count the same considerations. As federal patent law will apply to most of the issues in this case, there is no conflict of laws problem. This factor is neutral. *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 781 (E.D. Tex. 2009); *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 738 (E.D. Tex. 2005) ("This action was brought under federal patent laws. Federal patent laws are statutory and substantive decisions under these laws are reviewed by the Federal Circuit in all districts, eliminating any possibility of a conflict of laws issues."); *Net Navigation Sys., LLC v. Extreme Networks, Inc.*, No. 4:14-CV-254, 2014 WL 5465449, at *3 (E.D. Tex. Oct. 27, 2014) ("As this is a patent case arising under federal law, there are no issues relating to conflict of laws.")

### D. Defendants have not established that the Northern District of California is clearly more convenient.

In view of the foregoing factors, the Court must determine whether HPE has shown the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology.") Instead, the Court must make intrinsic factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id*.

Also, when carefully applying the convenience factors and the related arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Volkswagen II*, 545 F.3d at 315. ("[W]hen the

20

transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found that three of the eight factors weigh neutrally, two weigh slightly in favor of transfer, and three weigh against transfer, the Court concludes that the Northern District of California is not a "clearly more convenient" forum for this dispute.

## IV. CONCLUSION

For the reasons stated herein, the Court is of the opinion that HPE's Motion to Transfer (Dkt. No. 87) should be **DENIED**.

The parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

## So Ordered this

Feb 5, 2025

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE