# Exhibit 2

# EXHIBIT A

REDACTED PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00093-JRG |
| | § | (LEAD CASE) |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00064-JRG |
| | § | (MEMBER CASE) |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | REDACTED PUBLIC VERSION |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant International Business Machines Corp.'s ("IBM")
Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a)
(the "Motion"). (Dkt. No. 78.) Having considered the Motion, the subsequent briefing, and for
the reasons stated herein, the Court is of the opinion that the Motion should be **DENIED**.

## I. BACKGROUND

On January 31, 2024, Plaintiff VirtaMove Corporation ("VirtaMove") filed this action
against IBM, alleging infringement of U.S. Patent Nos. 7,519,814 and 7,784,058 (the "Asserted
Patents"). (Member Case No. 2:24-CV-00064-JRG, Dkt. No. 1.) VirtaMove accuses IBM of
infringing the Asserted Patents, which generally relate to software for the "containerization" of
computer applications, via IBM's Cloud Kubernetes Service ("IBM Kubernetes"). (*Id.* at ¶¶ 12,

22; Lead Case No. 2:24-cv-00093, Dkt. No. 78 at 2.)  IBM Kubernetes enables its customers to use open-source software tools such as Kubernetes and Docker to perform the accused containerization. (Dkt. No. 78 at 2.)

VirtaMove also brought suit against Hewlett Packard Enterprise ("HPE") in the Eastern District of Texas on February 9, 2024, alleging infringement of the Asserted Patents. (Dkt. No. 1.) On April 17, 2024, VirtaMove's suit against IBM was consolidated for pretrial purposes with VirtaMove's suit against HPE. (Dkt. No. 32.)  In addition to its suits against IBM and HPE, VirtaMove brought actions against Amazon.com, Inc. and Google LLC in the Western District of Texas, alleging that their services using Kubernetes and Docker software infringe the Asserted Patents.  (Dkt. No. 78 at 3.)

On June 5, 2024, IBM asserted counterclaims against VirtaMove for infringement of four patents owned by IBM. (Dkt. No. 49 at 12.) On August 5, 2024, an independent subsidiary of IBM known as Red Hat filed suit against VirtaMove in the Northern District of California seeking a declaratory judgment of non-infringement of the Asserted Patents.  (Dkt. No. 78 at 13; *See Red Hat, Inc. v. VirtaMove Corp.*, No. 5:24-cv-04740 (N.D. Cal. August 5, 2024, Dkt. No. 1). On August 21, 2024, almost seven months after VirtaMove filed this suit for patent infringement, IBM filed its Motion to Transfer. (Dkt. No. 78.)

## II.    LEGAL STANDARDS

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

The private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of

attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*.

The public interest factors include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id*.

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. *Id.* Absent such an elevated showing, the plaintiff's choice of venue must be respected. *Id.*; *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected. When a defendant is haled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.") (internal quotation marks and footnotes omitted).

Accordingly, transfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party "clearly establishes good cause." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). "Good cause" is established when the movant shows that "the marginal gain in convenience will be *significant*," and its evidence "makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* Furthermore, when deciding a motion to transfer under § 1404(a), the Court may consider "undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019).

Importantly, the convenience transfer questions must be decided as of the filing of the lawsuit, not the time the 1404(a) motion is filed or decided. *See, e.g., In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'"). Just as patent invalidity must be based on what a POSITA knew and understood at the time the patent application was filed, a motion to transfer for convenience must often be analyzed many months prior to the time a decision is rendered. This Court has considered the facts and circumstances relating to convenience as of January 31, 2024—approximately a year ago. The challenge in doing so is, in this case, exacerbated by Defendant's delay of almost seven months in bringing this Motion.

## III.    DISCUSSION

IBM seeks transfer of the above-captioned member case from this District to the Northern District of California on convenience grounds pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 78 at 1.)

### A.    The Threshold Inquiry - Jurisdiction in the Proposed Transferee Court

The threshold inquiry to a motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. Plaintiff does not dispute that the Complaint could have been filed in the Northern District of California. (*See* Dkt. No. 82; Dkt. No. 109-1.) Accordingly, the Court finds that this threshold question is satisfied and turns next to the underlying questions of convenience as they existed when this action was first brought.

### B.    The Private Interest Factors

#### 1.    The Relative Ease of Access to Sources of Proof

This factor focuses on the location of documents and physical evidence relating to the case. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023). Notwithstanding well-known advances in technology including the digitization of data, courts largely continue to focus on the relevance of

4

the physical location of these sources. *See, e.g.*, *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 316 (5th Cir. 2008); *In re Google LLC*, No. 2022-140, 2022 WL 1613192, at \*3 (Fed. Cir. May 23, 2022).  However, it is now recognized that when most of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis.  *In re TikTok, Inc.*, 85 F.4th at 358–59 (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Moreover, the parties must specifically identify and locate the sources of proof and explain their relevance.  *Envsys LLC v. T-Mobile USA, Inc*., No. 2:21-CV-00368-JRG, 2022 WL 2161028, at \*2 (E.D. Tex. June 14, 2022); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017).

In this case, IBM contends that "any relevant records" relating to the IBM Accused Products are located in the Northern District of California.  (Dkt. No. 78 at 11.)  Generally, IBM contends that the IBM Open Technology Development team, which is responsible for leading its focus on open-source containerization-related projects, is located at IBM's Silicon Valley Lab in San Jose, California.  (*Id.;* Dkt. No. 78-1 at ¶¶ 6, 8-10.)  IBM does not, however, specifically identify specific evidence that exists in the Northern District of California.  (*See* Dkt. No. 78; Dkt. No. 89; Dkt. No. 78-1.)  Consequently, the reference to "any relevant records" located in the Northern District of California is given little, if any, weight in the transfer analysis.[1]

IBM also argues that there are no relevant sources of proof in the Eastern District of Texas. (Dkt. No. 78 at 11.)  IBM contends that while VirtaMove's pleading points to an IBM server location in Plano, Texas, that location is no longer in use and never was used for the IBM Kubernetes service.  (*Id.*; Dkt. No. 78-2 at ¶ 15.)  As support, IBM provides a link showing that its

---

[1] To the extent, if any, that "any relevant records" actually ties to specific discoverable evidence, IBM fails to assert that such exists only in non-digital form. Consequently, the Court fairly concludes that if any records exist—which is an unaddressed question—they are digital and accessible from anywhere with ease.

current IBM Kubernetes server locations are in San Jose, California, Dallas, Texas, and Washington, D.C. (Dkt. No. 78-2 at ¶ 11, citing https://cloud.ibm.com/docs/containers?topic=containers-regions-and-zones.) Nevertheless, VirtaMove represents that it has evidence in eastern Canada that can be more easily transported to the Eastern District of Texas. (Dkt. No. 82 at 10.) Specifically, VirtaMove identifies two boxes of patent files stored in eastern Canada along with a copy of its source code, which are currently available for inspection in Dallas, Texas. (Dkt. No. 82 at 11; Dkt. No. 82-17.) These records are non-digital.

The Court finds that this factor is neutral. The location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is purely physical in nature. *See Volkswagen II*, 545 F.3d at 316-317; *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Here, the majority of evidence is digital and stored electronically, and therefore equally accessible in either forum. Importantly, IBM only asserts that "any relevant records of its contributions" to the "open source technology used in the accused products" would be located in the Northern District of California. (Dkt. No. 78 at 11.) Consequently, IBM has not met its burden of specifically identifying and locating identified sources of proof and then explaining their relevance so as to show that any gain in convenience from transfer would be material. *In re Clarke*, 94 F.4th at 508 (explaining that "good cause" is established when the movant shows that "gain in convenience will be significant"); *Enovsys LLC*, 2022 WL 2161028, at *2 ("Parties must specifically identify and locate sources of proof and explain their relevance."); *Utterback*, 716 F. App'x at 245 ("Utterback fails to identify with any specificity . . . what evidence would be inaccessible in Mississippi but readily available in Florida. Without more, we cannot credit such vague and conclusory assertions.") Consequently, this factor is neutral in the transfer analysis.

6

## 2. The Availability of Compulsory Process

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal Rule of Civil Procedure 45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person;" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1). As for party witnesses, a court may issue subpoenas "within the state where the person resides, is employed or regularly transacts business in person." *Id.* Since party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards *unwilling third-party* witnesses." *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-CV-79, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (citing *Volkswagen II*, 545 F.3d at 316) (emphasis added). Further, the availability of compulsory process or subpoena power to secure the attendance of unwilling witnesses "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (citations omitted).

In its Motion, IBM contends that this factor weighs in favor of transfer because it asserts that several sets of witnesses reside in the Northern District of California while no relevant witnesses reside in the Eastern District.[2] (Dkt. No. 78 at 9-10.)

---

[2] IBM identifies Greg O'Connor (the former CEO of VirtaMove's predecessor) as an unwilling adverse witness residing in the Northern District of California. (Dkt. No. 78 at 10.) VirtaMove, however, provides a declaration from Mr. O'Connor stating that he resides in Massachusetts, not California, and is willing to travel to Texas for trial. (Dkt. No. 82 at 9; Dkt. No. 83-2 at ¶ 3.) Since the Court resolves all factual conflicts in favor of the non-moving party, the Court will consider Mr. O'Connor under the willing witness factor. *See Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) (noting that factual conflicts are resolved in favor of the non-moving party).

The first set of witnesses that IBM identifies are third-party witnesses from the Kubernetes development team and Docker development team, which provided IBM with the accused software. (Dkt. No. 78 at 9.)  Specifically, IBM identifies Solomon Hykes, Jessie Frazelle, Tonis Tiigi, and Derek McGowan as witnesses who currently live and work in the Northern District of California. (Dkt. No. 78 at 5, 9; Dkt. No. 78-1 at ¶¶ 13-21; Dkt. No. 78-10 at 1; Dkt. No. 78-11 at 1.) IBM contends that these witnesses are relevant because VirtaMove's preliminary infringement contentions point to IBM's use of open-source Kubernetes and Docker, not any "specific implementation" by IBM. (Dkt. No. 89 at 2-3 (citing Dkt. No. 78-40.)

VirtaMove counters that IBM has failed to meet its burden of clearly demonstrating that these witnesses have specific and relevant testimony that will materialize at trial. (Dkt. No. 82 at 9-10.) While IBM's preliminary infringement contentions relied on publicly available information, VirtaMove contends that the evidence at trial will focus on "IBM's *custom* deployment of Docker or Kubernetes code." (Dkt. No. 109-1 at 2) (emphasis added). Consequently, VirtaMove argues that unless IBM admits its Accused Products use an unmodified version of open-source Docker or Kubernetes or asserts that these witnesses have a superior knowledge of IBM's product operation, IBM is far more likely to call one of its own engineers to testify to the operation of IBM's specific implementation of the Kubertnetes or Docker software.  (Dkt. No. 82 at 9; Dkt. No. 109-1 at 2.) VirtaMove also points out that IBM admits the "individuals most responsible for IBM Kubernetes . . . are predominantly located in Rochester, Minnesota, Austin, Texas, and Raleigh, North Carolina."  (Dkt. No. 78-2 at ¶ 13.)  Although IBM identifies Solomon Hykes, Jessie Frazelle, Tonis Tiigi, and Derek McGowan as unwilling witnesses residing in the Northern District of California, the Court is unconvinced that IBM has shown that all of these witnesses have relevant, non-redundant testimony that will actually materialize at trial, especially given that the

8

evidence will likely focus on IBM's custom deployment of Docker or Kubernetes code, which would make it likely that one of IBM's own engineers will be required to testify in lieu of these individuals. Though these witnesses ultimately weigh in favor of transfer, they weigh only slightly in favor of transfer.

A second set of witnesses identified are some of the inventors of the prior art that IBM contends invalidate the Asserted Patents. (Dkt. No. 78 at 9-10.) Specifically, IBM identifies Jonathan Clark, Andrew Tucker, John Beck, Daniel Price, Steven Osman, and Dinesh Subhraveti as unwilling third-party witnesses that it intends to call at trial, and IBM claims they reside in the Northen District of California. (Dkt. No. 78 at 5, 10.) VirtaMove argues that while the publications and publicly released software attributable to these inventors may be relevant prior art, IBM has not provided any reason why the testimony of those inventors is relevant. (Dkt. No. 82 at 10.) Further, VirtaMove correctly argues that inventors of prior art rarely appear in court, lessening any weight the Court should give these potential witnesses. (*Id.*) This Court notes, however, that the Federal Circuit has disapproved of the discounting of prior art witnesses based solely on the "categorical assumption" that defendants are likely to call few, if any, prior art witnesses that are identified in the transfer motion and when such assumption is "entirely untethered to the facts of [the] case." *In re Juniper Networks, Inc*., 14 F.4th 1313, 1319 (Fed. Cir. 2021). Nevertheless, the Fifth Circuit has recently established that the movant must show not only that "the marginal gain in convenience will be *significant*," but also "that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). VirtaMove argues that IBM's refusal to commit to limiting its prior art list to these sources when coupled with IBM's reservation of its right to assert other prior art leaves considerable room for IBM to modify and expand its prior art before trial. Of note, there is potential prior art based on inventors from Texas. This

9

REDACTED PUBLIC VERSION

exacerbates IBM's failure to clearly prove that any of these prior art witnesses will actually materialize at trial. (Dkt. No. 82 at 10.)

While IBM's identification of prior art witnesses slightly moves the scale in favor of transfer, the Court finds that the gain in convenience that might actually materialize at trial is less significant given the low likelihood of prior art witnesses actually testifying at trial. *See In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (stating that the movant has the burden to show that gains in convenience will actually materialize). Accordingly, the Court finds that these prior art witnesses only slightly tip the scales in favor of transfer.[3]

Finally, IBM contends that there are no relevant third-party witnesses located in the Eastern District of Texas. (Dkt. No. 78 at 10.) VirtaMove contends, however, that two of its former employees—David Roth and Ernesto Benedito—reside near Dallas, Texas and have knowledge about the value or operation of the accused VirtaMove products that its current employees lack. VirtaMove says these witnesses can only be compelled to attend trial in the Eastern District of Texas. (Dkt. No. 82 at 9; Dkt. No. 82-14 at 1; Dkt. No. 82-15 at 1; Dkt. No. 109-1 at 1; Dkt. No. 93-2 at 5.) Taking these statements as true, these two witnesses weigh against transfer.

Weighing the unwilling witnesses in totality for each of the parties, along with the likelihood that any gain in convenience might actually materialize at trial, this factor, on balance, weighs only very marginally in favor of transfer.

---

[3] IBM claims in a general sense that these witnesses reside in the Northern District of California. (*See* Dkt. No. 78 at 10, 12; Dkt. No. 89 at 2.) However, IBM does not support this claim with specific evidence that would enable the Court to ascertain the residences of these witnesses and weigh their presence in the transfer analysis. *See In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) ("It is the movant's burden—and the movant's alone—to "adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice."). Thus, any weight accorded to these witnesses is lessened.

### 3.      Cost of Attendance of Willing Witnesses

The third private interest factor considers the cost of attendance for both party witnesses and willing third-party witnesses. The Federal Circuit has described this factor as being especially important. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).  The Fifth Circuit has established a so-called "100-mile rule," which explains that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when the distance between the existing venue for trial and proposed trial venue exceeds 100 miles. *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343.  This is because a substantial distance to travel means added travel time together with more meal and lodging expenses.  *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023).

IBM contends that this factor weighs in favor of transfer because several witnesses reside in California.  (Dkt. No. 78 at 12-13.)  Specifically, IBM identifies two of its current employees, Nimesh Bhatia and Srinivas Brahmaroutu, as residing in the Northern District of California and one of the inventors of IBM's counterclaim patents, Allan Havemose, as residing in the Central District of California.  (*Id.*)  These witnesses weigh in favor of transfer.

IBM also reurges some of the previously identified inventors of prior art—Andrew Tucker, John Beck, Daniel Price, Steven Osman, and Dinesh Subhraveti—and members of the Kubernetes development team and Docker development team—Solomon Hykes, Jessie Frazelle, Tonis Tiigi, and Derek McGowan—as residing in the Northern District of California.  (Dkt. No. 78 at 12-13.) The Court, however, has already considered these witnesses under the second private interest factor.  As this Court has noted previously, such double-counting of witnesses is improper.  *E.g., Emerging Auto. LLC v. Kia Corp.*, No. 2:23-cv-00434-JRG, 2024 WL 3170398, at *11 (E.D. Tex. June 25, 2024).  Either these witnesses require compulsory process to secure their attendance (assessed under the second private interest factor) or they are willing witnesses (assessed under

the third private interest factor).  They cannot be both.  *See In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) ("[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling.") As this Court has already considered these witnesses under the second private interest factor, as IBM argued it should, the Court will not improperly double-count the impact of these witnesses under the third private interest factor. *See In re Apple Inc.*, 979 F.3d at 1340 (cautioning against "inappropriately count[ing] twice" the convenience of witnesses under multiple factors).

VirtaMove contends that this factor weighs against transfer because many witnesses associated with IBM and VirtaMove would find the Eastern District of Texas more convenient. (Dkt. No. 82 at 6-7.)  Specifically, VirtaMove contends that the Eastern District of Texas is more convenient for the other inventors of IBM's counterclaim patents, including Amit Paradkar (an IBM employee residing in New York) and Birgit Pfitzmann (a former IBM employee residing in Switzerland). (Dkt. No. 82 at 7; Dkt. No. 78-18; Dkt. No. 78-20; Dkt. No. 78-21.) IBM argues, however, that Birgit Pfitzmann is not a willing witness because he no longer works at IBM.  (Dkt. No. 89 at 3.)[4]   Thus, the Court only considers the differences in convenience to Amit Paradkar under this factor.  It is more convenient for him to travel from New York to Texas than to California. This weighs slightly against transfer.

VirtaMove also notes that IBM admits the "individuals most responsible for IBM Kubernetes," such as IBM's Director of Product Management IBM Cloud, Christopher Rosen, reside and work in IBM's offices in North Carolina, Texas, and Minnesota.  (Dkt. No. 82 at 7; Dkt. No. 78-2; Dkt. No. 89 at 4.) VirtaMove contends that Christopher Rosen, along with the

---

[4] As an unwilling witness in a foreign county, Mr. Pfitzmann will either not attend trial, attend by deposition, or travel to trial physically. These possibilities do nothing to show the transferee venue as more convenient. Should he be convinced to appear in person, travel to Texas from Switzerland is more convenient than travel to California.

"individuals most responsible for IBM Kubernetes" that IBM has yet to identify, would find the Eastern District of Texas more convenient than the Northern District of California. (Dkt. No. 82 at 7.) Furthermore, VirtaMove contends that Phil Estes (a former IBM Chief Technology Officer)[5] and Harvinder Saini (a current IBM employee) would find trial in Texas more convenient because they reside in New York and Pennsylvania, respectively. (Dkt. No. 82 at 7-8; Dkt. No. 82-6 at 55:7-18.) Accordingly, the Court finds that the identification of Christopher Rosen and Harvinder Saini weigh against transfer.

With respect to the Plaintiff's witnesses, VirtaMove claims that its active employees— Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antonie, and Emanuel Sousa—would find the Eastern District of Texas more convenient because they all reside in Eastern Canada, which is closer to Texas than to California. (Dkt. No. 82 at 6; Dkt. No. 82-5 at 9.) Similarly, VirtaMove states that its former employees, including three of the named inventors of the Asserted Patents— Paul O'Leary, Dean Huffman, and Mark Woodward—also reside in Eastern Canada and a fourth— Greg O'Connor—resides in Massachusetts. (Dkt. No. 82 at 8-9; Dkt. No. 82-5 at 9.) VirtaMove represents that these witnesses are willing to attend trial in the Eastern District of Texas because travel to and lodging in Marshall, Texas is "substantially less expensive" than travel to and lodging in the Northern District of California. (Dkt. No. 82 at 8-9; Dkt. No. 82-9; Dkt. No. 82-10; Dkt. No. 82-11; Dkt. No. 82-12.) The distance from Eastern Canada to the Eastern District of Texas is approximately half the distance as to the Northern District of California.[6] (*Id.*) VirtaMove also

---

[5] VirtaMove contends that Mr. Phil Estes, along with a "handful" other members of IBM's research team in New York, may be needed to testify about IBM's use of the container technology. (Dkt. No. 82 at 7.) Without an assertion by IBM that this former employee is a willing witness, however, the Court presumes that he is an unwilling witness outside the subpoena power of either district court. Consequently, the Court lends no weight to such unnamed and unwilling witnesses.

[6] The direct distance from Kanata, Canada to Marshall, Texas is 1,323 miles and the direct distance from Kanata, Canada to San Francisco is 2,435 miles.

13

notes that the lodging and meal costs in each venue, based on federal per diem rates, would be substantially less in the Eastern District of Texas.  (*Id.*)  The Court finds that transferring the case would result in considerable inconvenience for these nine willing witnesses.

In total, two witnesses live in the Northern District of California, one lives in the Central District of California, no witnesses live in this District, and several others live in or near eastern Canada or the east coast of the United States.  To summarize, the role and location of the willing witnesses is shown in the table below:

| Witness | Role | Location of Residence |
|---|---|---|
| Nimesh Bhatia and Srinivas Brahmaroutu | Current IBM employees | Northern District of California |
| Allan Havemose | An inventor of IBM's counterclaim patents | Central District of California |
| Amit Paradkar | An inventor of IBM's counterclaim patents | New York |
| Harvinder Saini | Current IBM employee with knowledge of 2016 meeting between VirtaMove & IBM | Pennsylvania |
| Christopher Rosen | Director of Product Management at IBM Cloud | North Carolina |
| Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antonie, and Emanuel Sousa | VirtaMove CEO VirtaMove Office Manager VirtaMove Director of Technology VirtaMove IT Manager VirtaMove Senior Technical Specialist | Ontario, Canada Ontario, Canada Ontario, Canada Ontario, Canada Ontario, Canada |
| Paul O'Leary, Dean Huffman, and Mark Woodward | Named inventors of asserted patents and former employees at VirtaMove | Kanata, Ontario, Canada Kanata, Ontario, Canada Lyndhurst, Canada |
| Greg O'Connor | CEO of VirtaMove's predecessor | Massachusetts |
| Other unnamed witnesses disclosed by IBM | "Individuals most responsible for IBM Kubernetes" | Austin, Texas and Rochester, Minnesota |
| Unidentified members of IBM Research Team | Contributors to the Container technology | New York |

Consequently, for all witnesses other than the three that live in California, transfer will increase travel inconvenience.  Nevertheless, IBM asks this Court to disregard the inconvenience to these witnesses because they "will already be traveling a substantial distance." (Dkt. No. 89 at 3.)  The Court disagrees that such significant discounting is warranted.  If the case remains in this District, some witnesses "would have to travel approximately half the distance to attend trial," which is a factor that the Federal Circuit has considered in a § 1404 analysis. *See Genentech*, 566

F.3d at 1344, 1345. The Court is mindful of the Federal Circuit's guidance not to give such witnesses "too much significance." *In re Apple*, 979 F.3d at 1343. However, that is no reason to discount the material inconvenience to these individuals, as IBM would have the Court do. Even without counting any unidentified witnesses in Texas, New York, and Minnesota which IBM admits are "most responsible" and have contributed to the technology at issue, the Court finds that on balance this factor weighs against transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019). Under this factor, the Court may consider any judicial economy benefits which would have been apparent at the time the suit was filed, including co-pending lawsuits. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). The Court may also consider the timeliness of the filing of the motion to transfer. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) ("The district court was within its discretion to conclude that [defendant's] failure to seek relief until late in the litigation weighed against transfer.").

Here, IBM claims that this factor favors transfer because VirtaMove has asserted the same patents against different defendants in four lawsuits filed in the Eastern and Western Districts of Texas. (Dkt. No. 78 at 13.) IBM contends that transferring these four cases serves judicial economy because these cases could be consolidated into one case in the Northern District of California. (*Id.* at 14.)[7] In addition, IBM notes that this case could be consolidated with a pending

---

[7] The Court notes that IBM's contention that transferring this case promotes judicial economy depends on its assumption that HPE's request for transfer pursuant to 28 U.S.C. § 1404(a) will also be granted. If the Court finds that HPE's request for transfer for convenience does not warrant transfer, then transferring this case would not promote judicial economy. Instead, transfer would serve to duplicate many of the proceedings as well as increase the number of resources expended by the Parties and the Court.

declaratory action recently filed in the Northern District of California by one of IBM's independent subsidiaries, Red Hat. (*Id.* at 13.)

VirtaMove argues that the *Red Hat* case should be ignored, given that motions for transfer are to be decided based on the "situation which existed when suit was instituted." (Dkt. No. 82 at 12.) VirtaMove also contends that the *Red Hat* case was filed solely to manipulate the transfer factors  (*Id.*)

Despite IBM's argument that transferring would promote judicial economy, it is notable that IBM waited almost seven months to file this Motion to Transfer (Dkt. No. 78), which was preceded by the filing of the *Red Hat* case.  During that time many resources were expended in this case by the arties and the Court. Those resources cannot be recouped to any degree, and will be largely wasted if this case goes to the Northern District of California to start over at the back of the line in that district. Accordingly, Courts have denied similar motions to transfer under the "reasonable promptness" standard where the moving party has significantly delayed.  *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-0134-JRG-RSP, 2017 WL 750290, at *7 (E.D. Tex. Feb. 27, 2017) (finding that this factor weighed against transfer when the defendant delayed filing the motion to transfer by more than six months); *Ralph v. Exxon Mobil Corp*. Case No. G-05-655, 2006 WL 2266258, at *4 (S.D. Tex. Aug. 8, 2006) (denying motion to transfer because it was brought "over six months after [the] case was filed"); *Norman IP Holdings, LLC v. Casio Computer Co.*, No. 6:09-CV-270, 2010 WL 4238879, at *6 (E.D. Tex. Oct. 27, 2010) ("Defendants' delay in bringing this motion to transfer approximately five months after Defendants answered and nearly seven months after Defendants were served, transfer would unnecessarily prejudice Plaintiff"); *FTC v. Multinet Mktg., LLC*, 959 F. Supp. 394, 395-96 (N.D. Tex. 1997) (denying motion to transfer brought seven months after the plaintiff filed the action because it was not

brought with "reasonable promptness" and would "likely to upset the discovery and trial schedule and waste judicial resources"). For these reasons, the Court finds that this private interest factor weighs against transfer.

**C.    The Public Interest Factors**

**1.    Speedy and Efficient Administration of Justice**

The first public interest factor concerns the speedy and efficient administration of justice. IBM does not dispute that the median time to trial in the Northern District of California is 27.3 months longer than in the Eastern District of Texas. (Dkt. No. 78 at 15; Dkt. No. 82 at 14.) Instead, IBM argues that this factor should not alone outweigh all those other factors. (Dkt. No. 78 at 15.) The Court agrees. This factor alone cannot dictate the disposition of IBM's motion, but this factor is fairly to be considered when weighing all the factors together. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021). This weighs against transfer.

**2.    Local Interest in Having Localized Interests Decided at Home**

The second public-interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir 2022) (cleaned up). The proper analysis under this factor does not consider the parties' connections to the venue because the local interest analysis is a public interest factor. *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024). Accordingly, the local-interest inquiry is concerned with the interest of non-party citizens in adjudicating the case. *Id.*

IBM contends that this factor favors transfer for two reasons. (*See* Dkt. No. 78 at 14-15.)

IBM first contends this factor favors transfer because the accused technology in IBM Kubernetes was developed in the Northern District of California. (Dkt. No. 78 at 14.) VirtaMove argues, however, that "Fifth Circuit did away with the . . . 'design and development' analysis"

17

because "neither 'design' nor development' are 'events that gave rise to a suit' for patent infringement under 35 U.S.C. § 271." (Dkt. No. 82 at 13; *see also* Dkt. No. 109-1 at 4 (citing *In Re Clark*, 94 F. 4th 502 and *In Re TikTok*, 85 F. 4th at 364).) The Court disagrees with VirtaMove's contention that the Fifth Circuit did away with the "design and development" analysis on the basis that these are not events giving rise to a suit for patent infringement. Indeed, the Fifth Circuit noted in *In re Clarke* that the District of Columbia had a local interest in the case because the party's "development and operations activities" occurred there. 94 F.4th at 512. In the context of patent infringement, the events giving rise to a suit for infringement occur not only where an infringing product is used, offered for sale, or sold, but also where that infringing product is made. 35 U.S.C. 271(a); *see, e.g., R2 Solutions LLC, v. Databrick Inc*., No. 4:23-CV-1147, 2024 WL 4932719, at *6 (E.D. Tex. Dec. 2, 2024). Therefore, the Court may properly consider where the accused products were made when weighing the local interests.

However, the Court must be wary of double-counting other factors already considered, such as the locations of the witnesses that designed and developed the accused products or the locations of physical evidence. As such, the local-interest inquiry is properly focused on the interest of "non-party citizens," including the non-party individuals that contributed to the design and development of the accused technology in this case. *See In re Clarke*, 94 F.4th at 511.

IBM next contends that transfer is warranted because the Eastern District of Texas has no local interest. (Dkt. No. 78 at 15.) IBM argues that the Asserted Patents were not developed nor prosecuted in this District, nor were the Accused Products. (*Id*.) VirtaMove argues that the local interest factor does not favor transfer because IBM's products and VirtaMove's products are sold nationwide. (Dkt. No. 82 at 12 (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("[T]he sale of an accused product offered nationwide does not give rise to a substantial

interest in any single venue.")  As support, VirtaMove argues that an injunction in this case would affect citizens of the Eastern District of Texas just as much as it would affect citizens of the Northern District of California.  (Dkt. No. 109-1 at 5.)  IBM contends, however, that VirtaMove fails to address the concentration of partners and customers in the Northern District of California that have an interest in this litigation, including non-party residents who contributed to the accused open-source technologies.  (Dkt. No 89 at 5.)

VirtaMove also contends that the facts giving rise to willful infringement occurred in Dallas, Texas in meetings between VirtaMove and IBM representatives in 2016, where IBM learned about VirtaMove's technology.  (Dkt. No. 82 at 12.)  While this may not completely counterbalance any local interest of the Northern District of California, VirtaMove argues that these events create another local interest in Texas other than nationwide sales of the accused technology.

Ultimately, both districts have some local interest. The question is whether one district has a greater local interest than the other when the Accused Products are sold nationwide. The Fifth Circuit recently addressed a similar situation in *In re Chamber of Commerce of United States of America*. 105 F.4th 297, 308 (5th Cir. 2024). There, though the case concerned a challenge to an agency's Final Rule promulgated in the District of Columbia, the Fifth Circuit held that where the rule was promulgated did not create a "localized" interest favoring transfer to the District of Columbia because it would affect credit card issuers and customers nationwide. *Id.* Likewise, if the Court were to grant an injunction in this case, that would affect third parties across the nation. *See In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 308–09 (5th Cir. 2024) (noting that "plaintiffs seek nationwide injunctions . . . to block the effect across the nation").  Furthermore, if

this action results in the Asserted Patents being invalidated, that too would have a separate but different nationwide effect.

After considering the local interests of non-party citizens, including the majority of non-party individuals who contributed to the IBM Kubernetes technologies that reside in the Northern District of California and may have their work and reputation called into question by this suit, this factor, on balance, weighs only slightly in favor of transfer.

### 3.    Familiarity of the Forum with the Governing Law

Both parties agree that this factor is neutral.  (Dkt. No. 78 at 15; Dkt. No. 82 at 14.)  The Court sees no reason to overturn the parties' agreement and accordingly considers this to be neutral.

### 4.    Avoidance of Unnecessary Problems of Conflict of Laws

The last public interest factor seeks to avoid "unnecessary problems of conflict of laws." *Def. Distributed v. Bruck*, 30 F.4th 414, 436 (5th Cir. 2022).  While IBM argues that this factor favors transfer for the same reasons it contended regarding the fourth private interest factor, the Court finds no reason to double count the same considerations.  As federal patent law will apply to most of the issues in this case, there is no conflict of laws problem.  This factor is neutral. *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 781 (E.D. Tex. 2009); *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 738 (E.D. Tex. 2005) ("This action was brought under federal patent laws. Federal patent laws are statutory and substantive decisions under these laws are reviewed by the Federal Circuit in all districts, eliminating any possibility of a conflict of laws issues."); *Net Navigation Sys., LLC v. Extreme Networks, Inc.*, No. 4:14-CV-254, 2014 WL 5465449, at *3 (E.D. Tex. Oct. 27, 2014) ("As this is a patent case arising under federal law, there are no issues relating to conflict of laws.")

**D.    Defendants have not established that the Northern District of California is clearly more convenient.**

In view of the foregoing factors, the Court must determine whether IBM has shown the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology.")  Instead, the Court must make intrinsic factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id*.

Also, when carefully applying the convenience factors and the related arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Volkswagen II*, 545 F.3d at 315. ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found that three of the eight factors weigh neutrally, two weigh slightly in favor of transfer, and three weigh against transfer, the Court concludes that the Northern District of California is not a "clearly more convenient" forum for this dispute.

## IV.    CONCLUSION

For the reasons stated herein, the Court is of the opinion that IBM's Motion to Transfer (Dkt. No. 78) should be **DENIED**.

REDACTED PUBLIC VERSION

The parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

## So Ordered this

**Feb 5, 2025**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE