# EXHIBIT D

Careers   About   Contact   Subscribe

United States





ALERTS

# Fifth Circuit Clarifies Standard for Venue Transfer: What it Means for Texas Patent Litigants

Sep 09 2024 • 18 Min Read

## Executive Summary

- The Eastern and Western Districts of Texas are popular venues for patent infringement plaintiffs.
- Defendants often seek to escape these venues by filing motions to transfer.
- If a defendant's motion to transfer venue is denied, they may seek to compel

https://www.womblebonddickinson.com/us/insights/alerts/fifth-circuit-clarifies-standard-venue-transfer-what-it-means-texas-patent

- the court to transfer venue through a writ of mandamus filed with the Federal Circuit
- Historically, the Federal Circuit has applied Fifth Circuit venue transfer law liberally, overturning several decisions of Texas district courts and compelling venue transfer.
- Recently, the Fifth Circuit decided *In re Clarke* and *In re Chamber of Commerce*, which 1) increases the burden on the defendant to show that the new venue is significantly and actually more convenient, and 2) limits facts a judge may consider in the balancing test.
- These decisions are expected to make it more difficult for a party to transfer venue out of Texas district courts.

## Introduction

Since the early 2000s, Texas district courts have been battling to maintain their status as the premier venue for filing patent lawsuits. At one point, 43% of all patent infringement cases in the United States were filed in the Eastern District of Texas (EDTX).[1] After the Supreme Court placed strict limits on where patent suits may be filed in *TC Heartland*,[2] the EDTX saw a sharp decrease in patent cases due to the sparse contacts most defendants have with the mostly rural district. However, since 2018, the Western District of Texas (WDTX) has carried the torch for patent plaintiffs. The WDTX is home to Austin, a hub for many innovative companies who are often on the receiving-end of patent lawsuits. With the jurisdictional requirements of *TC Heartland* being satisfied by these litigants, the WDTX has grown to host upwards of 25% of the nation's patent infringement cases.[3]

The prolific rise of the WDTX as a popular patent venue for plaintiffs is largely due to Judge Alan D. Albright, a United States District Judge for the district.[4] After Judge Albright's appointment to the bench in 2018, the former intellectual property litigator welcomed patent cases and has proven himself reluctant to let them transfer out of his purview.[5] At the same time, the Federal Circuit has issued an unprecedented amount of mandamus orders – ultimately forcing Judge Albright to transfer cases out of the WDTX.[6] This spawned a line of cases from the Federal Circuit interpreting Fifth Circuit law.[7] An apparent split arose between the traditional interpretation of Fifth Circuit transfer law and the Federal Circuit's application of it, which Judge Albright highlighted in his opinions and orders.[8] In response, the Fifth Circuit Court

of Appeals has been systematically clarifying its venue transfer test.[9] The resulting changes to Fifth Circuit venue transfer law, may call into question some of the Federal Circuit's prior rulings and affect a party's ability to transfer out of several patent-heavy districts.

## The Fifth Circuit's Transfer Test

The standards for transferring venue are found in 28 U.S.C. § 1404(a), which permits a district court to "transfer any civil action to any other district or division where it might have been brought" if it is "[f]or the convenience of parties and witnesses" and "in the interest of justice."[10] In a 2008 decision, the Fifth Circuit noted that the purpose of §1404(a) is to prevent plaintiffs from abusing their privilege of venue choice by subjecting defendants to venues that are inconvenient.[11] Because the plaintiff is "the master of the complaint," courts must balance the deference given to a plaintiff's choice of venue with the inconvenience imposed on the defendants.[12]

The inconvenience to the defendants is measured by an eight-factor balancing test known as the *Gilbert* factors.[13] The *Gilbert* factors include four private interest factors and four public interest factors to determine whether the defendant has shown that the transferee venue is clearly more convenient. The private interest factors include:

1. The relative ease of access to sources of proof;
2. The availability of compulsory process to secure the attendance of witnesses;
3. The cost of attendance for willing witnesses; and
4. All other practical problems that make trial of a case easy, expeditious, and inexpensive.[14]

The public interest factors include:

1. The administrative difficulties flowing from court congestion;
2. The local interest in having localized interests decided at home;
3. The familiarity of the forum with the law that will govern the case; and
4. The avoidance of unnecessary problems of conflict of laws or in the application of foreign law.[15] The private interest factors focus mainly on the convenience of the parties, while the public interest factors focus mainly on interests of non-party citizens within the district in adjudicating this case

locally.

Unlike the law of some other circuits, the *Gilbert* factors do not include the plaintiff's choice of venue as an independent factor in the balancing test.[16] Instead, the Fifth Circuit incorporates deference to the plaintiff's choice venue by placing the burden of proof on the defendant. Specifically, the burden is on the defendant to prove that there is "good cause" to transfer. Good cause is a higher standard than preponderance of the evidence because it requires the movant to demonstrate that the transferee venue is "clearly more convenient."[17] If the balance of the eight factors clearly demonstrates good cause to transfer, the court should grant the motion.[18] Because transfer motions are rarely reviewed on appeal, district courts often lack consistency when applying the balancing test.[19] Sometimes judges require a clear showing of good cause (as with Judge Albright), and other times a less clear showing of good cause will suffice (as is arguably the current case in the Federal Circuit).[20]

## The Federal Circuit's Application of the *Gilbert* Factors

District court judges in Texas, like Judge Albright, believe that the court has broad discretion in reviewing transfer motions and weighing the Gilbert factors.[21] In their view, this broad discretion accounts for the realities of modern litigation like eDiscovery and online hearings, which have greatly reduced the inconvenience on out-of-town parties and witnesses compared to those of the past.

However, the Federal Circuit has tended to stick to a strict interpretation of the *Gilbert* factors.[22] As put by Judge Albright, "[t]he Federal Circuit has time and again rebuffed district courts for grounding the sources-of-proof factor in reality and, for example, tempering the weight accorded to the 'location' of electronic documents that can be transmitted across the globe with great ease."[23] Similarly, the Federal Circuit is highly skeptical of time-to-trial data and other statistics bearing on court congestion that are often cited by district courts in their transfer analysis.[24]

Recent Federal Circuit case law suggests that its application of the *Gilbert* factors contain nuanced differences that may make it easier to transfer a patent case out of Texas at the Federal Circuit, as opposed to in Fifth Circuit courts. Unlike the opinions of the Fifth Circuit, the Federal Circuit generally does not spend many words belaboring the point about how the good cause standard is imposed to give

"the master of the complaint" deference to the venue they initially chose.

Instead, the Federal Circuit simply restates the line from *Volkswagen* that the defendant must clearly demonstrate that another forum is more convenient.[25] While this is the correct standard, in practice, the threshold showing for a transfer motion reviewed by the Federal Circuit is certainly lower than what Judge Albright requires in the WDTX.[26]

For example, in *In re Google LLC*, the Federal Circuit granted a mandamus petition to order transfer of a case from the WDTX to the Northern District of California (NDCA).[27] Judge Albright found that most factors were either neutral or only weighted slightly one way or the other, and Albright concluded that the Defendant had not carried their burden of showing that NDCA was clearly more convenient.[28] However, the Federal Circuit afforded much more weight to each factor and ultimately found that the district court abused its discretion because (1) the court erroneously found that judicial economy factors weighed in favor of denying the transfer, (2) the NDCA was more convenient for potential witnesses, (3) the events giving rise to the patent infringement suit had a particularized connection with NDCA, (4) NDCA provided easier access to sources of proof—including documents—and was convenient for potential non-party witnesses, and (5) compulsory process to secure the attendance of witnesses was available in the NDCA.[29] Until recently, what evidence bears on each *Gilbert* factor and how much discretion district court judges should be afforded when weighing the factors has been unclear. *In re Clarke* and *Chamber of Commerce* offer some much-needed insight on the issues.

## Fifth Circuit Further Clarifies the Venue Transfer Test

By 2022, the discrepancies between the Fifth Circuit and Federal Circuit had become obvious.[30] In response, the Fifth Circuit made their intentions clear when they recognized "1404(a) decisions often have importance beyond the immediate case because venue transfer decisions are rarely reviewed, and district courts have applied out tests with too little regard for consistency of outcomes."[31] The Fifth Circuit reiterated in 2022's *Defense Distributed* that the ultimate inquiry is whether the transferee venue is clearly more convenient, not simply more likely than not to be more convenient.[32] Further, "[w]here there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in

favor of transfer."[33] This clearly places the burden of proof on the defendant and appears to prevent courts from giving the defendant the benefit-of-the-doubt.

In the same year as *Defense Distributed*, the Fifth Circuit decided *Planned Parenthood*.[34] There, the court emphasized that the *Gilbert* factors are not necessarily exhaustive or exclusive and none are dispositive, allowing district courts more latitude to consider technology that improves convenience like eDiscovery and online hearings.[35] To that point, the Fifth Circuit also held that the location of sources of proof matters most when the evidence is physical in nature, opening the door for judges to consider that electronic files can easily be shared from any location.[36]

In 2023, *TikTok* further clarified how some of the *Gilbert* factors should be analyzed.[37] For example, the Court noted that statistics on time-to-trial data carry little weight in the analysis, and inconvenience to parties and witnesses scales linearly with distance from the venue.[38] Finally, these cumulative developments began to crystalize with the recent rulings of *Clarke*[39] and *Commerce*.[40]

*Clark* concerned a district court's decision to transfer a suit against the Commodities Futures Trading Commission. In its holding, the district court primarily relied on the court congestion factor which, on appeal, the Fifth Circuit held was an abuse of discretion.[41] Most importantly, the Court held that "to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious – i.e., clearly demonstrate – that those marginal gains will *actually* materialize in the transferee venue."[42] The Court stressed that the case for transfer must be clear and not based on speculation – whether it is speculation about court congestion or judicial economy, the marginal gains in convenience must "actually materialize." Additionally, the Court in *Clarke* applied holdings from *Defense Distributed* and *TikTok* to explain that the local interest factor is primarily concerned with the events that give rise to the suit, not simply the locations of the parties or the alleged harms.[43] The Court also identified a new category of interests within the local interest factor. Some cases will have interests that are "completely diffuse," meaning that the events and impact of the suit will be felt equally in many different jurisdictions (such as with a nationwide injunction).[44] Completely diffuse interests cannot weigh in favor of transfer because no one district a higher stake in the litigation than any other.[45]

The most recent case, *Chamber of Commerce*, fully summarizes the latest developments in the Fifth Circuit's venue transfer test.[46] This opinion sought to "clarify to this district court and others how to engage in the § 1404(a) transfer analysis."[47] In the opinion, the Fifth Circuit begins with a recitation of the history of venue transfer – emphasizing the weight that must be afforded to the plaintiff's initial venue choice.[48]

The Fifth Circuit goes on to provide a detailed description of the good cause standard, incorporating the significant and actual requirement from *Clarke*.[49] The Court emphasized that the "standard is not met if the movant merely shows that the transferee venue is more likely than not to be more convenient" and "the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer."[50] Further, the court applied the *Gilbert* factors as they were clarified in the line of cases from *Planned Parenthood* through *Clarke*, ultimately holding that Court congestion alone cannot justify transfer because it is merely speculative and did not clearly demonstrate good cause to transfer.[51]

The *Chamber of Commerce* decision marks another chapter in the Fifth Circuit's campaign to clarify the venue transfer test that, in effect, increases the required showing for defendants seeking transfer. In the words of the Fifth Circuit – "the bar is much higher."[52]

## Will It Become More Difficult to Transfer a Patent Case Out of Texas?

After these recent Fifth Circuit decisions, the ability for parties to transfer out of the most patent-heavy districts in Texas will likely be affected. The Fifth Circuit has recently made it clear that the defendants face a high bar when seeking a § 1404(a) transfer. Not only has the "good cause" standard been strengthened, but many of the individual *Gilbert* factors have been clarified. For some factors, the weight that district courts should apply to them has been greatly reduced – i.e., court congestion and "location" of electronic evidence. For patent litigation, the Federal Circuit in some its most recent mandamus orders has often relied on the location of evidence factor when ordering transfer, despite the fact that most relevant evidence in today's world is stored electronically. Thus, evidence going towards these factors may not move the needle much, if at all, after these recent Fifth Circuit's decisions.

Moreover, other factors have been overhauled by the recent Fifth Circuit decisions – i.e., the local interest factor does not apply when the interests are "completely diffuse." In a patent case, defendants with a nationwide presence may now find it more difficult to argue that there is a local interest where an allegedly infringing product was designed. The door is now open for plaintiffs to argue that the interests at issue in a patent suit are completely diffuse. After all, patent rights extend nationwide, and if an infringing product is available in every district, it may be hard to convince a judge that the interests are localized elsewhere.

Only one Federal Circuit opinion has referred to *Clarke* since its issuance. In *Haptic*, a case was transferred out of the WDTX, and the plaintiff sought mandamus relief to keep the case in Texas.[53] In a short opinion denying the petition, the Federal Circuit made brief reference to the case, but had no reason to do a detailed analysis of the good cause standard and several of the factors.[54] Thus, it is yet to be seen how the Federal Circuit will respond to the developments in *Clarke* and *Chamber of Commerce*. The Federal Circuit may attempt to resist the adopting the Fifth Circuit's clarifications and attempt to distinguish their recent holdings on other grounds. However, the Fifth Circuit is clearly determined to continue clarifying its venue transfer test until Fifth Circuit districts courts, along with the Federal Circuit, are on the same page. Patent litigants should be aware of these developments in the Fifth Circuit, and only time will tell how the Federal Circuit responds.

*Womble Bond Dickinson Summer Associate* Grant Marshall, *a 3L student at Emory University School of Law, assisted with this article.*

---

[1] Jamieson Knopf, *The New 'Renegade Jurisdiction': How the Fifth Circuit Can Prevent the Extraordinary Writ of Mandamus from Becoming an Extra-Ordinary Remedy*, 30 GEO. MASON L. REV. 831, 834 (2023).
[2] *See* TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 581 U.S. 258 (2017).
[3] Jamieson Knopf, *The New 'Renegade Jurisdiction': How the Fifth Circuit Can Prevent the Extraordinary Writ of Mandamus from Becoming an Extra-Ordinary Remedy*, 30 GEO. MASON L. REV. 831, 835 (2023).
[4] *Id.*
[5] Jamieson Knopf, *The New 'Renegade Jurisdiction': How the Fifth Circuit Can Prevent the Extraordinary Writ of Mandamus from Becoming an Extra-Ordinary

*Remedy*, 30 GEO. MASON L. REV. 831, 835 (2023).

[6] In 2021, the Federal Circuit granted 18 out of 30 mandamus petitions against Judge Albright. Jamieson Knopf, *The New 'Renegade Jurisdiction': How the Fifth Circuit Can Prevent the Extraordinary Writ of Mandamus from Becoming an Extra-Ordinary Remedy*, 30 GEORGE MASON L. REV. 831, 859 (2023).

[7] *See, e.g., In re* Apple Inc., 979 F.3d 1332 (Fed. Cir. 2020); *In re* Google LLC, No. 2021-171, 2021 U.S. App. LEXIS 30052 (Fed. Cir. Oct. 6, 2021); *In re* Samsung Elecs. Co., 2 F.4th 1371 (Fed. Cir. 2021); *In re* Google LLC, 58 F.4th 1379 (Fed. Cir. 2023).

[8] *See, e.g.,* Motion Offense, LLC v. Google LLC, No. 6:21-cv-00514-ADA, 2022 U.S. Dist. LEXIS 181260 (W.D. Tex. Oct. 4, 2022) (granting motion to transfer while highlighting the discrepancies between the Fifth Circuit and Federal Circuit) ("The Court's decision turns on whether it should apply traditional Fifth Circuit transfer law or apply the Federal Circuit's interpretations of Fifth Circuit transfer law. This Court cannot ignore or overrule cases from the Federal Circuit. Only because of those Federal Circuit cases, this Court GRANTS Defendant's Motion to Transfer.").

[9] *See, e.g.,* Def. Distributed v. Bruck, 30 F.4th 414, 433 (5th Cir. 2022); *In re* Planned Parenthood Fed'n of Am., Inc., 52 F.4th 625 (5th Cir. 2022); *In re* TikTok, Inc., 85 F.4th 352 (5th Cir. 2023); *In re* Clarke, 94 F.4th 502 (5th Cir. 2024); *In re* Chamber of Com. of United States of Am., No. 24-10463, 2024 WL 3042100 (5th Cir. June 18, 2024).

[10] 28 U.S.C. § 1404(a).

[11] In re Volkswagen of Am., Inc., 545 F.3d 304, 313(5th Cir. 2008) (en banc).

[12] *Id.*

[13] *Id.*

[14] In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

[15] *Id.*

[16] *See e.g.,* Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000) (listing the 9th Circuit's factors, which include the plaintiff's choice of venue).

[17] *Id.*

[18] *Id.*

[19] *See In re* TikTok, Inc., 85 F.4th 352, 367 (5th Cir. 2023).

[20] *See In re* Apple Inc., 979 F.3d 1332, 1339-45 (Fed. Cir. 2020) (increasing the weight given to five of the factors and reaching a different result than Judge Albright in the WDTX).

[21] Jamieson Knopf, *The New 'Renegade Jurisdiction': How the Fifth Circuit Can*

*Prevent the Extraordinary Writ of Mandamus from Becoming an Extra-Ordinary Remedy,* 30 GEO. MASON L. REV. 831 (2023).

[22] *See e.g., In re* Apple Inc., 979 F.3d 1332 (Fed. Cir, 2020) (ordering to transfer the case out of WDTX on a strict reading of the Gilbert factors).

[23] XR Comms., LLC v. Google LLC, No. 21-cv-00625, 2022 WL 3702271, at 4* (W.D. Tex. Aug. 26, 2022).

[24] *E.g. In re* Apple Inc., 979 F.3d 1332, 1344 ("[A] court's general ability to set a fast-paced schedule is not particularly relevant to this factor . . . .").

[25] *See e.g., In re* Google LLC, 58 F.4th 1379 (Fed. Cir. 2023).

[26] Hence the flurry of mandamus orders to the Federal Circuit out of Texas. *See* Docket Navigator Analytics, DOCKET NAVIGATOR (running search for Docket Text: mandamus; Courts: Federal Circuit); *See also In re* Apple Inc., 979 F.3d 1332, 1339-45 (Fed. Cir. 2020) (increasing the weight given to five of the factors and reaching a different result than Judge Albright in the WDTX).

[27] *In re* Google LLC, 58 F.4th 1379 (Fed. Cir. 2023).

[28] *Id.*

[29] *Id.*

[30] *See generally* Motion Offense, LLC v. Google LLC, No. 6:21-cv-00514-ADA, 2022 U.S. Dist. LEXIS 181260 (W.D. Tex. Oct. 4, 2022) (detailing differences between Fifth Circuit and Federal Circuit applications of the *Gilbert* factors); XR Comms., LLC v. Google LLC, No. 21-cv-00625, 2022 WL 3702271 (W.D. Tex. Aug. 26, 2022) (noting the same).

[31] *In re* TikTok, Inc., 85 F.4th 352, 367 (5th Cir. 2023) (cleaned up).

[32] Def. Distributed v. Bruck, 30 F.4th 414, 433 (5th Cir. 2022).

[33] *Id.* at 434.

[34] *In re* Planned Parenthood Fed'n of Am., Inc., 52 F.4th 625 (5th Cir. 2022).

[35] *In re* Planned Parenthood Fed'n of Am., Inc., 52 F.4th 625, 630-31 (5th Cir. 2022) (finding that the lower court's consideration of practical travel expenses between the relevant venues was not "based on incorrect legal principles"); *see* Jamieson Knopf, *The New 'Renegade Jurisdiction': How the Fifth Circuit Can Prevent the Extraordinary Writ of Mandamus from Becoming an Extra-Ordinary Remedy*, 30 GEO. MASON L. REV. 831, 861-62 (2023).

[36] *Id.* at 630 ("The location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature.").

[37] *In re* TikTok, Inc., 85 F.4th 352 (5th Cir. 2023).

[38] *Id.* at 358-66.
[39] *In re* Clarke, 94 F.4th 502 (5th Cir. 2024).
[40] *In re* Chamber of Com. of United States of Am., No. 24-10463, 2024 WL 3042100 (5th Cir. June 18, 2024).
[41] *In re* Clarke, 94 F.4th 502 (5th Cir. 2024).
[42] *In re* Clarke, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis in original).
[43] *In re* Clarke, 94 F.4th 502, 510-11 (5th Cir. 2024).
[44] *Id.*
[45] *Id.*
[46] *In re* Chamber of Com. of United States of Am., No. 24-10463, 2024 WL 3042100 (5th Cir. June 18, 2024).
[47] *Id.* at p. 24.
[48] *Id.* at pp. 6-8.
[49] *Id.*
[50] *Id.* at p.8
[51] *Id.* at pp. 24-25.
[52] *Id.* at p. 8.
[53] *In re* Haptic, Inc., No. 2024-121, 2024 U.S. App. LEXIS 15312 (Fed. Cir. June 25, 2024).
[54] *In re* Haptic, Inc., No. 2024-121, 2024 U.S. App. LEXIS 15312, at *5 (Fed. Cir. June 25, 2024).

## Contributors


Rodney R. Miller


James E. Dority

## Related

Patent Litigation
PTAB Trials
Intellectual Property Litigation
Patents - Mechanical
Intellectual Property

Patents - Product Design

IP Licensing And Transactions

Patents - Chemical, Pharma, Biotech

Patents - Electrical Engineering And Software

## Womble Bond Dickinson Newsletter

Sign up to receive fresh content delivered to your inbox weekly!

Email Address

SUBSCRIBE

## Recommended



ALERTS

**Micro-captive Insurance Reportable Transactions and the Reporting Requirements**

Feb 19 2025

ALERTS

**Executive Order: One Voice for America's Foreign Relations**

Feb 18 2025

ALERTS

**Prove It or Lose It: USPTO's AI-Inspired Candor Oversight**

Feb 17 2025

WOMBLE BOND DICKINSON

Sitemap

Legal Notices

Privacy Policy

Cookies

Accessibility

- Atlanta
- Baltimore
- Boston
- Bristol
- Charleston
- Charlotte
- Charlottesville
- Colorado Springs
- Columbia
- Denver
- Edinburgh
- Greensboro
- Greenville
- Houston
- Huntsville
- Irvine
- Las Vegas
- Leeds
- London
- Los Angeles
- Newcastle
- Nashville
- New York
- Phoenix
- Plymouth
- Raleigh
- Reno
- Research Triangle Park
- San Francisco
- Silicon Valley
- Southampton
- Tucson
- Tysons
- Washington, D.C.
- Wilmington
- Teesside
- Winston-Salem

